McDONOUGH v. WILLIAMS.

Opinion delivered December 16, 1905.

1. FRAUD—ABSTRACT AND MISLEADING INSTRUCTION.—In an action for fraud alleged to have been practiced by defendant upon plaintiff in the purchase by the former of corporate shares from the latter, where un-

| 77 | 261 |
| 77 | 526 |

| 77 | 261 |
| s86 | 603 |
| 87 | 474 |

| 77 | 261 |
| f89 | 247 |

disputed evidence showed that plaintiff sold his stock outright to defendant, it was error to instruct that, if the defendant was acting as agent of the plaintiff in the sale of the stock, and fraudulently concealed the price received for it, and failed to account therefor, he would be liable. (Page 268.)

2.  SAME—MEASURE OF DAMAGES.—Where plaintiff sued for fraud practiced by defendant in the purchase of certain corporate stock, the measure of damages is the difference between the price paid by defendant for the stock and its actual value, if the latter exceeded the former. (Page 269.)

3.  INSTRUCTION—WHEN MISLEADING.—Where there was evidence tending to prove that at one time there existed the relation of principal and agent between plaintiff and defendant, and that this relation was subsequently dissolved by agreement, an instruction which ignored the question whether the relationship was dissolved was misleading and erroneous. (Page 269.)

4.  FRAUD—EXECUTORY CONTRACT—WAIVER.—The vendor in an executory contract for the sale of chattels, who was induced by fraud and deceit to enter into the contract, and who, after discovering the fraud, subsequently performed the contract by delivering the property and receiving the purchase price, cannot maintain an action for damages for the fraud. (Page 270.)

5.  SALE—WHEN EXECUTORY.—A contract for the sale of corporate stock is executory until completed by transfer of the stock. (Page 272.)

6.  EVIDENCE—RELEVANCY.—Where, in an action of deceit in the sale of corporate stock, the measure of damages was based upon the excess of the actual value of the stock over the price paid, it was error to exclude evidence of its actual value. (Page 272.)

7.  TRIAL—DIRECTING VERDICT.—It was not error to refuse to direct a verdict for the defendant in an action of deceit alleged to have been practiced in the sale of corporate stock if there was evidence tending to establish (a) a confidential relationship between defendant and plaintiff whereby the latter relied upon the former to disclose information concerning the transaction, and (b) that defendant, knowing of such reliance, concealed information from plaintiff and his advisers, and thereby consummated a purchase of plaintiff's stock at par, in view of a certain resale at a much higher price. (Page 273.)

Appeal from Sebastian Circuit Court; STYLES T. ROWE, Judge; reversed.

STATEMENT BY THE COURT.

This is an action brought by G. T. Williams against Jas. B. McDonough to recover damages for fraud and deceit alleged to have been practiced by the defendant to plaintiff's injury in the purchase by defendant from plaintiff of shares of stock in the Mon-

treal Coal Company, a domestic corporation owning and operating a coal mine in Sebastian County. The corporation was organized with a capital stock of $50,000, of which $24,000 was subscribed and issued—$9,000 to the plaintiff, Williams, $3,500 to his brother-in-law, Oscar P. Bonney, and $11,500 to defendant, McDonough. Williams and McDonough resided in the city of Ft. Smith, and Bonney in Chicago, Ill. Williams represented Bonney, and was authorized to act for him in the sale or disposition of his stock. McDonough was president of the corporation, Bonney was vice-president, and Williams was secretary and general manager. Williams managed the operation of the mine and the sale of coal, and McDonough assisted in making collections and disbursements of funds.

On January 14, 1903, the plaintiff sold and transferred his stock and Bonney's to the defendant for the par or face value paid in cash, and on May 11, 1903, this suit was commenced to recover damages resulting from the alleged fraud and deceit perpetrated by defendant in inducing the sale of the stock.

The plaintiff alleged in his complaint that, by reason of the ties of friendship between himself and defendant and their intimate association as co-owners of the capital stock of the corporation and managers of its business, a relation of trust and confidence subsisted between them, and that, by reason of that relation, defendant was enabled to successfully practice the alleged fraud and deceit, and that on that account he (plaintiff) relied upon the representations made by defendant. Also that he (plaintiff) was absent from the State of Arkansas for some time before the sale of the stock, and for that reason relied upon the representations of defendant. He also alleged that defendant, knowing that P. A. Ball and T. W. M. Boone had the confidence of the plaintiff, by false representation and fraudulent concealment of material facts induced them to advise plaintiff to sell his stock to defendant at par, and said Ball and Boone, on the faith of said representations, did so advise plaintiff to sell, and that he (plaintiff) relied and acted upon said advice.

The said fraud and deceit are alleged to have consisted of the following, viz.:

(1). That defendant falsely represented to Ball and Boone that the financial condition of the company was much worse than

it was in fact, and that the company must go into liquidation unless plaintiff sold his stock to defendant; (2) that he falsely represented to plaintiff and to Ball and Boone that the obligations of the company were more pressing than they were in fact, and that the creditors of the company were making more peremptory demands for payment than were in fact being made by creditors; and (3) that he fraudulently and deceitfully concealed from plaintiff and from Ball and Boone, at the time he was negotiating with plaintiff for the puchase of the stock, the fact that he had already entered into a contract with one Franklin Bache for the sale of the entire capital stock of the corporation at a price largely in excess of the par value, which contract was consummated after his purchase from plaintiff.

It is also alleged in the complaint that, at the time of the purchase of the stock from plaintiff at par, the actual value thereof was greatly in excess of the par value, and damages are claimed in the sum of fifteen thousand dollars by reason of such false representations and fraudulent concealments, whereby plaintiff was induced to sell his stock.

The defendant filed his answer, denying all the allegations of the complaint as to fraud and deceit or misconduct of any kind, and denied that the market value of the stock at the time of his purchase of plaintiff's stock exceeded the par value; he denied that there was any relation of trust and confidence between himself and plaintiff at the time of the sale, or that plaintiff was ignorant of any facts connected with the affairs of the corporation of the sale of the stock; and he alleged that plaintiff sold the stock to him after a full investigation and with knowledge of all the facts.

There is some conflict in the testimony as to what occurred between the plaintiff and defendant prior to December 10, 1902, in negotiating for the sale of the stock, but there are two important facts about which there is hardly any doubt. One is that plaintiff had offered to sell his stock to defendant at par, and the other that defendant had undertaken for himself and plaintiff to find a purchaser for all the stock at the best price obtainable.

On the last-named date the plaintiff left the State, and did not return until the day on which he transferred the stock to defendant, and the negotiations between them for the sale of the

ARK.] McDONOUGH v. WILLIAMS. 265

stock up to the final act of consummation of the sale by transfer of the shares were conducted altogether by written and telegraphic communications, the last being a telegram sent from St. Louis by plaintiff to defendant accepting the latter's offer to take the stock at par.

On January 10, 1903, defendant executed to Franklin Bache a written option for the purchase of the entire stock of the corporation on February 7, 1903, at the price of $33,000, of which $3,500 was paid to defendant on that day (Jan.10) under a stipulation in the option contract that the sum paid should be forfeited to defendant if said Bache should fail to make the next payment on February 7.

The plaintiff reached Fort Smith on January 14, 1903, and at once transferred the stock (his own and Bonney's) to defendant upon payment of the price.

The plaintiff testified that he suspected that defendant had concealed material facts from him, and, immediately before he signed the transfer of the stock, he said to defendant: "Mr. McDonough, if you have obtained this stock from me fairly and squarely, without any misrepresentations, it is all right, you can have it; but if you used any undue influence or chicanery in getting possession of this stock, you will probably hear from me later on;" and defendant replied, "Mr. Williams, there is nothing of the kind at all."

The defendant's version of this interview just before the transfer of the stock is stated as follows:

"At two o'clock I was at my office, and Mr. Williams came in about 2:30. He walked into the office, and said: 'Mack, I am ready to do business with you.' I said, 'All right.' He says, 'I knew the moment I got your telegram in Battle Creek that you had a deal on." I said, 'Of course you knew that, because I told you that in one of my telegrams.' He said, 'I made up my mind that I was going to come to Fort Smith, and look into it.' I says, 'All right, you are here; now look into it.' I said, 'Mr. Williams, if you did not intend to sell your stock to me, why did you telegraph me that you were in duty bound to go to Chicago and consult Bonney, and that you would answer me from there, and that you thought the matter or offer would be all right, O.K.?' He said he did that for the purpose of delay; that he found out that he couldn't get home, and that his messages were simply

to keep the matter up, so that he could determine whether he should sell the stock to me or not. He says, 'I am ready to sell it. I have no objection to but just one thing. Bonney and I decided that we would not sell the stock to you, and we did not think it right of you to buy it at $12,500, and turn it in to some new concern at $26,000,' I said, 'Mr. Williams, before I answer that question, I want to say this, that the stock is now yours; you needn't sell it unless you want to. If you do sell it, and I buy it, it is mine. If I buy it, it is mine; and I will do with it as I please. I have a deal on.' He interrupted me, and said, 'I don't want to know anything about your deal.' I said, 'Very well; if my deal goes through, I will make anywhere from $5,000 to $10,000. If it does not go through, and this mine is a failure, I will be bankrupt.' He said, 'Oh well; I will go your bond if you get into bankruptcy.' "

The instructions of the court and other features of the testimony will, as far as deemed important and essential to the decision of the case, be discussed in the opinion.

The jury returned a verdict in favor of the plaintiff in the sum of $4,000, and the plaintiff subsequently entered a remittitur in the sum of $1,112.50.

The defendant appealed to this court.

*James F. Read, Winchester & Martin, Youmans & Youmans,* and *Rose, Hemingway & Rose,* for appellants.

A verdict should have been directed for defendant. No case of agency was made by the proof; it was an outright sale. 66 S. W. 512; 1 Am. & Eng. Enc. Law (2 Ed.), 937. If there was an agency, it was terminated. 45 Ia. 331; 26 Pac. 102. There was no duty on defendant to disclose the Bache option; the concealment was not actionable. 8 Col. 161; 12 East, 616. The representations must be material. 11 Ark. 58; 46 *Id.* 347; 149 U. S. 427. A tenant in common is not bound to disclose. 35 N. Y. Sup. 807. Nor did plaintiff rely upon the representations. 32 Minn. 197. He did not believe them. 56 N. W. 628; 125 U. S. 247; 130 *Id.* 643; 7 Col. 16; 34 N. E. 847; 105 Fed. 573; 85 *Id.* 740; 44 N. E. 193; 1 Sweeny, 406. Nor does the testimony make a case of deceit. 33 W. Va. 624; 63 Mo. 181; 9 Ired. 507. The representations of Boone are too indefinite and uncertain. 24 Atl. 412; 3 N. E. Rep. 759; 7 *Id.* 88, 610; 37 Ind. 17; 99 Ill. 346; 64

N. E. 1125; 85 Mid. 414.   Neither Ball, Boone, nor Williams had the right to rely upon the alleged representations.  3 L. R. A. 801; 7 Ark. 167.  And no deceit was shown.  6 L. R. A. 219; 4 *Id.* 158. See also 135 U. S. 609; 118 Ind. 565; 11 L. R. A. 201; 114 Mass. 99; 58 Me. 49; 2 Sutherland on Damages, 484.  Representations must be made with intent to deceive, and must be believed and relied upon, and must deceive.   9 Ired. 507; 47 Ark. 164; 44 N. E. 195; 5 Mees. & W. 83; 56 Ala. 377; 23 Mich. 405; 97 Mich. 481.  Misconduct of plaintiff's attorney was prejudicial.  93 N. W. 722; 72 Ark. 427; 69 *Id.* 648; 65 *Id.* 619; 61 *Id.* 137.  Testimony to show what occurred after plaintiff sent his second telegram was clearly admissible, as showing the value of the property and throwing light on question of fraud and deceit.   51 N. E. 1084; 7 Ch. Div. 541, 509; 167 Mass. 231; 50 N. Y. 480; 48 N. Y. S. 1078; 70 Pac. 753; 37 Ch. Div. 541-509; 1 Sedgw. Meas. Dam. (8 Ed.) 257. A stockholder is not an agent of the other stockholders; no such relation exists.  70 Ala. 190; 5 Ill. App. 257; 58 *Id.* 370; 113 Ia. 462; 72 N. Y. S. 352.  The modified contract was not completed until it was agreed upon by both parties. This was a question of law for the court.  55 Ind. 206; 31 N. W. 690; 67 Ia. 678; 46 Mo. 366; 122 Mo. 677; 119 U. S. 151.  False representations are not sufficient, unless material and relied on.  30 Ark. 363; 47 Ia. 217; 41 Mich. 286.   See also 1 Ark. 41; 16 *Id.* 117; 8 *Id.* 146; 36 Am. Rep. 198.   Where a good motive or bad one may be inferred from acts, the law takes the good one. 42 Conn. 328; 1 Scam. 344.   Mere buyer's talk not considered.   9 Mass. 334; 63 Me. 12.   It made no difference what the buyer would make out of the transaction.   132 U. S. 130; 47 Ark. 148; 76 Fed. 909. There is no duty upon the president of a company to give inside information to a stockholder.   44 Ind. 509.   See also 3 Wall. 573; 52 Barb. 581; 2 Pom. Eq. § 903.

*Oscar L. & Lovick P. Miles,* for appellee.

Appellee had the option to carry out the contract and sue for the damages sustained by reason of the false and fraudulent representations of his vendee.  30 Ark. 540; 5 Lawson's Rights, Rem. & Pr. § 2358; 47 Ark. 167, and cases cited.   The selection of the measure of damages was for the appellee.  The party guilty of the fraud is to be charged with such damages as have naturally and approximately resulted therefrom.   3 Sutherland on

Damages, § 1171; 47 Ark., *supra;* 43 Ark. 439; 14 Am. & Eng. Enc. Law (2 Ed.), 177, and cases cited; 26 Ark. 445; 46 Ark. 420; 49 Ark. 245. Appellant's agency was not terminated by appellee's refusal to give him an option on the stock. It was his duty to disclose the Bache option before he could purchase for himself. 26 Ark., 46 Ark. and 49 Ark., *supra.* It was not necessary that the representations be made directly to appellee. 14 Am. & Eng. Enc. Law (2 Ed.), 149; 43 Ark. 454; 4 Ga. 100, and cases cited. The court will not reverse for improper remarks of counsel, if, no objection made, the lower court instructs the jury to disregard them. 75 Ark. 67; 74 Ark. 256; 74 Ark. 604; 75 Ark. 347. All testimony as to the value of the stock, other than that named in the option contract, was immaterial. 3 Sutherland on Damages, 47 Ark. and 43 Ark., *supra.*

McCulloch, J., (after stating the facts.)   1. This is an action for fraud and deceit alleged to have been practiced by appellant upon appellee in the purchase of shares of corporation stock from the latter. The complaint is framed upon that theory. It is therein alleged that the defendant made false and fraudulent representations as to certain facts, and falsely and fraudulently concealed certain facts, and that plaintiff, "believing that all had been fully and fairly disclosed by defendant, agreed to sell and did sell to defendant his stock" at the par value thereof, and that the actual value at that time was far greater than its par value, and that defendant at the time had a contract for resale of the stock at a far greater price. The undisputed evidence—the testimony of plaintiff himself—showed that plaintiff sold his stock outright to the defendant, but plaintiff claimed that he was induced to do so by his reliance upon false representations and fraudulent concealments made by defendant.

The court, in express words, so characterized the action in one of its instructions given at the request of the defendant, and told the jury that, "before the plaintiff would be entitled to recover, he must prove by a fair preponderance of the evidence the alleged false representations," that they were known by the defendant to be false, and were relied upon by plaintiff. Yet the court in other instructions allowed the case to go to the jury upon an entire different theory, *i. e.,* that the defendant was acting as agent of the plaintiff in the sale of the stock, and had

fraudulently concealed the price received for it, and failed to account to plaintiff, his principal, for the full price received. The two theories are inconsistent with each other, and these instructions are conflicting, for, if the defendant bought the stock outright from plaintiff, he could not have then been the agent of plaintiff for the sale of the stock, and could not be held to account, in an action for damages, for the price he received on a resale of the stock, though he would be liable in such action for damages resulting from his acts of fraud and deceit, the measure of which would be the difference between the price paid to the plaintiff for his stock and the actual value thereof at the time, if the latter exceeded the former. 4 Suth. Dam. § § 1171, 1172; *Potter* v. *Necedah Lumber Co.,* 105 Wis. 25.

Instruction number one given by the court is as follows: "If you find from the evidence in this case that the plaintiff gave to the defendant general authority to sell or dispose of his (plaintiff's) stock along with his (defendant's) in the Montreal Coal Company; that thereafter defendant, while the plaintiff was absent from the State, at Battle Creek, Michigan, entered into a contract with a third party for the sale of the entire issued capital stock of said coal company at the price of approximately $33,000 for the $24,000 of said issued capital stock, and, after having made said contract, he (defendant) attempted to acquire and did acquire the stock of the plaintiff for a less sum of money than he had contracted to and did sell the same for, you will find for the plaintiff in the sum equal to the difference between what defendant paid Williams for his (Williams's) stock and what he (defendant) got for said stock, unless you further find from the evidence in the case that defendant, before acquiring plaintiff's stock, explained fully to plaintiff his (defendant's) contract of sale of said stock to such third party, or that the plaintiff knew, or in the exercise of a due degree of caution ought to have known the facts in regard to the contract for the sale of the stock."

This instruction, aside from erroneously putting the case before the jury upon a theory inconsistent with the pleadings and proof, is incorrect in that it cuts off, as a matter of law, all right of the defendant to purchase the stock from plaintiff because of the fact alone of the latter having previously authorized him to sell the stock, regardless of any severance of the relation of

principal and agent, and regardless of the question whether plaintiff was then relying upon defendant for a full disclosure of all the facts or had the right to so rely.

Even though the relation of principal and agent subsisted between the parties, they had the power to dissolve that relation. If they did so, and the circumstances and further transactions between them were such as to absolve the quondam agent from disclosure of facts coming to his knowledge, then he could with propriety deal with the former principal without making such disclosure. These are questions of fact for trial juries to determine, and not matters of law for the court. Upon the statement of facts made by the defendant, he had the right to have these questions passed upon by the jury, but the instruction just quoted entirely eliminated them from consideration.

The fourth instruction given by the court is open to the same objection, and was erroneous. The second was erroneous, because it declared the wrong measure of damages according to the rule hereinbefore announced.

2. The court gave, over the objection of the defendant, the following instructions:

"The court tells you, as a matter of law, that if you find from the evidence in this case that McDonough telegraphed Williams an offer to pay for his (Williams's) stock, and Williams received such telegraphed offer, and, before McDonough withdrew such offer, Williams telegraphed McDonough an acceptance of such offer, and you believe said offer or acceptance was not modified, then a contract was thereby made between McDonough and Williams for the sale of Williams's stock at par to McDonough, and all that occurred thereafter between McDonough and Williams, as shown by the testimony in this case, except the mere fact of the actual transfer of the stock, is immaterial to this case, and should be disregarded utterly by you, unless you believe that what occurred thereafter tends to explain the sale of stock; and the mere fact of the actual transfer is only material as showing compliance with the contract of sale into which Williams entered.

The ground of appellant's objection to this instruction is that there was evidence tending to show that, after plaintiff sent the message from St. Louis agreeing to sell the stock at par.

he received information of the alleged fraud and deception, and. after receipt of such information, he proceeded to perform the contract, thereby waiving the alleged fraud.

The question therefore arises: Can the vendor in an execu· tory contract for the sale of corporation stock or other personal property, who has been induced by fraud and deceit to enter into the contract, and who subsequently performs the contract by delivering the property and receiving the purchase price after dis- covery of the fraud, maintain an action for damages for the fraud? It seems clear to us, upon principle, that he cannot, though a search of the adjudged cases reveals a paucity of authority on the precise question. Authority is not, however, entirely lack- ing to sustain the proposition that the fraud is waived under such circumstances. *Thompson* v. *Libby,* 36 Minn. 287; *Thweatt* v. *McLeod,* 56 Ala. 375; *Gilmer* v. *Ware,* 19 Ala. 252; *Schmidt* v. *Mesmer,* 116 Cal. 267; *Western Elec. Co.* v. *Hart,* 103 Mich. 477; *Edwards* v. *Roberts,* 7 Sm. & Mar. 544.

In *Thompson* v. *Libby, supra,* Judge MITCHELL, speaking for the court, says:

"If the contract be executed in whole or part before the fraud is discovered, it is well settled that the purchaser need not rescind, but may retain the property, and also bring his action for damages on account of the deceit. But to allow a purchaser who has discovered the fraud while the contract is still wholly executory to go on and execute it, and then sue for the fraud, looks very much like permitting him to speculate upon the fraud of the other party. It is virtually to allow a man to recover for self-inflicted injuries. The fraud is really consummated, and the damages incurred, by the acceptance of the property and paying for it. And if this is done after the fraud is discovered, the purchaser cannot say that he sustained this damage by reason of the fraud. It seems to us that if a party discovers the fraud before he enters upon the performance of the contract, he must decide whether he will go on under it or rescind. He cannot say it is a good contract for the purpose of authorizing him to accept. the property, but not binding on him as to the price to be paid for it."

An executory contract which has been procured by fraud is not binding upon the party against whom the fraud has been

perpetrated. He may, after discovering the fraud, either perform it or rescind it; and if with knowledge of the fraud he elects to perform it, this is equivalent to his making a new contract, and to permit him under those circumstances to recover for a fraud would be to do violence to every rule upon which compensatory damages are allowed. We are aware that there are some cases which appear to hold to the contrary, but upon examination they will generally be found to be cases where the contract had been executed wholly or in part when the fraud was discovered, or where the fraudulent representations were treated as warranties, and damages awarded for breaches thereof. *Whitney* v. *Allaire,* 1 N. Y. 305; *Johnson* v. *Culver,* 116 Ind. 278; *Nauman* v. *Oberle,* 90 Mo. 666. Of course, where the representation to a purchaser amounts to a warranty of title, value or quantity, he may, without waiving the breach of the warranty, execute the contract and sue for the breach. The case of *Haven* v. *Neal,* 43 Minn. 315, is sometimes quoted as holding that performance of an executory contract after discovery of the fraud is not a waiver of the right to sue for the fraud, but in that case the contract had been partly executed when the fraud was discovered.

We hold that no action can be maintained for the damages where the contract is executed after the discovery of the fraud, and the court erred in so instructing the jury and in excluding evidence tending to establish the fact that appellee knew of the alleged fraud when he consummated the sale by transfer of the stock.

The court gave other instructions to the effect that plaintiff could not recover if he had information of the alleged fraud, but he qualified each by a proviso that the jury must first find that the contract of sale was modified. By this qualification the court doubtless had reference to the question whether the contract was changed from a stipulation for sale partly on credit to a sale for cash. The terms of the contract of sale were evidenced by the written letters and telegrams, and it was the duty of the court to construe the contract and declare its terms to the jury, but whether this change amounted to a modification of the contract or not, it was still executory until the sale was completed by the transfer of the shares of stock.

3. The court erred in excluding evidence offered by appellant tending to show the value of the corporation stock at the

time of the sale. The rule hereinbefore declared as to the measure of damages rendered it competent to show the value of the property sold. If the stock was worth no more than the price received by appellant for it, then he was not damaged. 4 Suth. Dam., § § 1711, 1712; *Potter* v. *Necedah Lumber Co., supra.*

4. Appellant challenged the legal sufficiency of the evidence by a request for peremptory instruction to the jury to return a verdict in his favor, and we are now asked to dismiss the case for the same reason, instead of remanding it for a new trial. We are not prepared to say that the evidence is not sufficient to sustain a verdict for the plaintiff under proper instructions. It is clear from the evidence that the final transaction between the parties was a sale by plaintiff to defendant of his stock, not a sale by the defendant as agent of plaintiff, and that the defendant was not acting as plaintiff's agent in the resale to Bache. Therefore, as before stated, the evidence is not sufficient to hold the defendant in damages to account as agent of the plaintiff for the amount he received for the stock in the resale to Bache. But there is evidence tending to establish a relation of trust and confidence between the parties extending up to the final consummation of the transfer of stock by plaintiff to defendant. It is therefore a question of fact for a jury to determine, under proper instructions, whether, notwithstanding the severance of the relation of principal and agent, the confidential relation continued up to the time of the sale, and, if so, whether the plaintiff, on account of that relation, relied upon the defendant to disclose information concerning the prospective resale to Bache at a higher price than the par value, and whether the defendant, knowing of such reliance, concealed the information from plaintiff or from Ball and Boone when he knew they were the trusted advisers of plaintiff, and consummated a purchase of plaintiff's stock at par in view of a certain resale at a much higher price. These are inferences of fact which the jury could have drawn from the evidence, and we cannot say that the evidence was insufficient to warrant an inference favorable to plaintiff's contention, so as to entitle him to a verdict.

There was no evidence that the defendant misrepresented the financial condition of the company either to the plaintiff or to Messrs. Ball and Boone, or that he misrepresented the urgent

attitude of the creditors of the concern, and that issue should have been withdrawn from the consideration of the jury.

5. Many exceptions were saved below to alleged misconduct of plaintiff's counsel during the progress of the trial; but, as the cause must be reversed for the reasons already stated, we assume that the conduct complained of will not occur again in the trial anew, and we do not deem it necessary to discuss these exceptions, or to determine whether appellant was prejudiced thereby, further than to say that the remarks were improper, and should not have been indulged in.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.