KENNEDY et al. v. BENDER.

(Court of Civil Appeals of Texas. Galveston. Feb. 1, 1911. On Motion for Rehearing, Oct. 12, 1911.)

1. CONTRACTS (§ 98*) — VALIDITY — FRAUD— REMEDIES ON DISCOVERY.

One induced to make a contract by the fraud of the other party may, on discovery of the fraud, rescind the contract, or he may affirm it and sue for the deceit.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 447; Dec. Dig. § 98.*]

2. CONTRACTS (§ 270*)—FRAUD—RESCISSION.

A party electing to rescind a contract induced by the fraud of the other party thereto must act promptly on acquiring knowledge of the fraud, and any conscious recognition of the contract as binding with knowledge of the fraud bars the right to rescind.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1189, 1200; Dec. Dig. § 270.*]

3. CONTRACTS (§ 98*)—FRAUD—EFFECT.

Where a party induced to make a contract by the fraud of the other party thereto elects to affirm the contract, he may keep what he has received and continue to treat the contract as binding on him, doing what is required by the terms thereof and sue for the fraud.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 447; Dec. Dig. § 98.*]

Reese, J., dissenting.

Appeal from District Court, Harris County; N. G. Kittrell, Judge.

Action by J. M. Bender against Edward Kennedy and another. From a judgment for plaintiff, defendants appeal. Affirmed on rehearing after opinion of Supreme Court (135 S. W. 524) on certified questions.

Duncan & McGregor and George L. Teat, for appellant Kennedy. S. Taliaferro and G. L. Teat, for appellant McKallip. Wilson & Cole, for appellee Bender.

REESE, J. This is an appeal from a judgment of the district court in an action instituted by J. M. Bender against Edward Kennedy and J. C. McKallip to recover $400 actual and $500 exemplary damages, based upon the alleged fraud of defendants in inducing

---

plaintiff to purchase certain shares of stock in an insolvent corporation. The trial, with a jury, resulted in a verdict and judgment for plaintiff for $400 actual and $250 exemplary damages, from which judgment, their motion for a new trial being overruled, defendants appeal.

The petition charged: "That heretofore, on the 7th day of September, 1906, or thereabouts, the defendants each and all, jointly and severally, represented to plaintiff that they had organized said Houston Casket & Manufacturing Company, under the laws of the state of Texas, with an authorized capital of $100,000, for the purpose of manufacturing bank, store, and office furniture, boxes, showcases, and cabinets, and other articles of similar character, in Houston Heights, Harris county, Tex. That $78,000 of the capital stock had been sold, of which sum defendant Edward Kennedy was the subscriber and owner of $25,000, J. C. McKallip was the subscriber and owner of $25,000, and Frank Greenaway the subscriber and owner of $20,-000 of the capital stock of said Houston Casket & Manufacturing Company. Said defendants further represented to plaintiff that the Houston Casket & Manufacturing Company owned the large brick building formerly occupied by the Warratah Furniture Factory, and the machinery therein, at which place they were operating in Houston Heights, Harris county, Tex., and that said Houston Casket & Manufacturing Company also owned 72 vacant building lots, adjoining its factory in Houston Heights, Harris county, Tex., upon which lots said company expected to build houses for their employés and sell to them on the installment plan, and provide its employés with homes near the factory upon easy payments. That defendants jointly and severally, each and all, confederating and co-operating together, further represented to plaintiff that the Houston Casket & Manufacturing Company was perfectly solvent and in splended financial condition, and amply able to take care of large contracts; that its officers were J. C. McKallip, president, Cary Shaw, treasurer. and Frank Greenaway, superintendent. That the said representations, hereinabove set out, were made by said defendants, each and all, jointly and severally confederating and co-operating together, in furtherance of a common conspiracy and design, on behalf of each and all, for the purpose of inducing the public generally, and plaintiff especially, to buy and invest in stock in said pretended solvent corporation, Houston Casket & Manufacturing Company." It was further alleged that upon the faith of these representations, which he believed to be true, and induced alone thereby, plaintiff purchased, paying therefor $400 in cash, four shares of the capital stock of the corporation, of the par value of $400; that the representations were all false; that the defendants had paid nothing for their $50,000 of stock; that the corporation did not own the property in Houston Heights; that the corporation was at all times, from its organization, wholly insolvent; and that Cary Shaw, who is "a highly regarded man in the financial world of Houston," was not and never had been the treasurer of the company, or in any manner connected therewith. It was alleged that the representations so made by defendants, who were the original organizers and promoters of the corporation, were false and were known by them to be false when made, and that they were fraudulently and willfully made for the purpose and with the design of inducing him to buy the stock. It was alleged that the stock was wholly worthless, and that by reason of the premises plaintiff had sustained actual damages in the sum of $400, and by reason of the willful fraud he claims exemplary damages in the sum of $500.

Defendants answered separately that the court had no jurisdiction, the amount sued for being less than $500, and that there was a misjoinder of parties, in that it appeared from the allegations of the petition that each of the defendants acted individually and separately and without collusion. Each of them demurred generally, and set up special exceptions to the petition, which need not be here stated. In addition to the general denial, the allegations of fraud were fully and specifically denied, and it was further alleged that plaintiff subscribed for the stock in order to get a position with the corporation as foreman, which was the sole inducement; that he had notice, by the record thereof, of the mortgage on the property of the company; and that he continued in the employment of the company and attended the meetings of the stockholders until the day the corporation went into the hands of a receiver, December 26, 1906. It was further specifically alleged that plaintiff became fully advised of the condition of the corporation within three or four weeks after he bought the stock; that he made no offer to rescind, but, on the contrary remained in the employ of the corporation, drew his salary, participated in the meetings of the stockholders, and on March 13, 1906, at a meeting of the stockholders, "while a resolution to accept certain stock donated to said corporation by this defendant, and others, and to place the same on the market at 50 per cent. on the dollar, because of the unfortunate financial condition of said corporation, was being considered, the plaintiff offered to amend said resolution by causing each share for which cash had been paid to be increased one share, which resolution and amendment was carried and adopted, and by said act of the plaintiff, and the adoption of said resolution and amendment, he elected to take and did take eight shares of paid-up stock, instead of the four shares then owned and paid for by him; and the plaintiff did not at that time, nor at any other time, make any complaint to the de-

fendants or to any one, as long as the said corporation was in existence and doing business, that he had been deceived and fraudulently induced by this defendant, or any one else, to take stock therein, and he did not at that time, nor at any time while said corporation was a going concern, demand the return of his money and notes, nor did he offer to surrender his stock, but instead of so doing, with full knowledge of the financial condition of said corporation, he chose to take $800 worth of the stock of said corporation for which he had only paid $400, so that he would double his money, if the corporation succeeded, and this defendant now charges that the plaintiff cannot in equity and good conscience willfully engage in this sort of a speculative scheme to multiply his fortunes in the event of the success of the corporation, and at the same time hold this defendant liable for his losses for the purchase of stock therein, in the event of failure."

We will not incumber this opinion with conclusions of fact further than to say that the evidence was sufficient to establish substantially all the allegations of the petition and to authorize the finding of the jury as to both actual and exemplary damages. A majority of the court is, however, of the opinion that the undisputed evidence established that, with full knowledge of the fraud, appellee had so ratified the contract with regard to the purchase of the stock, and so condoned the fraud, as to estop him and bar him of recovery. In this latter view the writer of this opinion does not concur.

Without discussing the assignments of error and the propositions thereunder severally, it is sufficient to say that we have carefully examined them all, and they are severally overruled, except as hereinafter indicated.

Except as to the issue of ratification and condonation as a bar to recovery, which issue the court declined to submit, we agree that the issues were correctly presented to the jury in the charge given, and with the exceptions indicated none of the objections to the charge are tenable.

This brings us to the question upon which the majority of the court concludes that the judgment should be reversed and here rendered for appellants, and it is only necessary, in this opinion, to discuss the assignments of error presenting that question.

By their first assignment of error appellants complain of the action of the court in refusing to give to the jury a special charge requested by them to return a verdict for the defendants. Several grounds of error are set up in this assignment, none of which have any merit except the following: "Because the plaintiff, by his acts and conduct subsequent to his full discovery of the facts and conditions, waived any and all rights of action, if any he ever had, against these defendants, and is now estopped from asserting any claim whatever, based thereon, against these defendants."

Appellants also requested the following charge which was refused; the refusal being made the ground for the second assignment of error: "You are instructed that although you may believe from the evidence that defendants made false and fraudulent representations to plaintiff, as alleged in his petition, still, if you further believe from the evidence that he discovered the true condition of said corporation, and the truth of all of such fraudulent representations, within four weeks after the date of his subscription to the stock therein, and that he did not then demand return of his money and notes for the purchase price of said stock, and did not offer to tender back said stock, but that he only spoke to defendant J. C. McKallip, and inquired of him as to the ability of the corporation to meet the pay roll and running expenses, and that, having been assured by said J. C. McKallip that he would furnish money for the corporation and see that the corporation came through all right, thereafter plaintiff remained in the employ of the corporation, and drew money for salary, and participated in the meetings of stockholders, and in the meeting of November 13, A. D. 1906, voted to have his shares of stock doubled from four shares to eight shares, and continued in the employment of said corporation until the 26th day of December, A. D. 1906, when said corporation went into the hands of a receiver in bankruptcy, and continued to hold his stock in said corporation until the date of the filing of this suit, and until the trial of this case, then you will find your verdict for defendants."

As the facts stated in this charge, as a basis of a verdict for defendants, if found to be true, are established by the uncontradicted evidence, and specially by the testimony of appellee himself, the charge was tantamount to an instruction to find for defendants, and must be so considered. If this charge should have been given, then the peremptory instruction to find for defendants should have been given.

The only ground of ratification or condonation, after knowledge of the fraud, entitled to consideration, is that based upon the action of appellee at the stockholders' meeting of November 13, 1906, some weeks after, according to his own testimony, he had acquired full knowledge of the insolvent condition of the corporation and of the falsity of the representations that had been made to him as an inducement to purchase the stock. This is what occurred at that meeting of stockholders: Appellants McKallip and Kennedy and Frank Greenaway, in view of the financial condition of the corporation, then trembling, as was afterwards developed, on the verge of bankruptcy, offered to donate to the corporation certain shares of their stock—that is, Kennedy $24,000 worth, Mc-

Kallip the same, and Greenaway $5,000 worth —with the understanding that the certificates therefor be canceled and the stock, or so much thereof as might be necessary, be resold for the benefit of the company at such prices as might be determined by the board of directors; the donation being made for the purpose of relieving the financial condition of the company and putting it on its feet as a going concern. A resolution was offered to accept this proposition; the stock to be placed upon the market for sale at a minimum price of 50 cents on the dollar, the proceeds to be used to pay the debts and operating expenses of the concern, and any residue to be put in the treasury for the use of the company. This resolution having been read and seconded, the minutes show that appellee Bender offered an amendment in substance that, inasmuch as certain stockholders, himself among the number, had bought and paid for their stock at par, the stock so held by them should be increased so as to give them two shares for each share so held; that is, to double their stock and make it really cost only 50 cents on the dollar of its face value. Appellee testified that one Blair, another stockholder who had bought at par, offered this amendment, and he seconded it, but that is immaterial. As amended the resolution was unanimously adopted, and it is clearly and undisputably shown that appellee was present and acted with the others in adopting the amended resolution.

We cannot accept the contention that the same rule applies to this action against appellants for damages, for their fraud in inducing appellee to take stock in an insolvent corporation, as in an action against the corporation itself for a rescission of the contract and a return of the money paid. Appellee entered into a written contract with the corporation, by the terms of which he was to subscribe for ten shares of stock. For four shares he was to pay cash, and he then and there paid in $400 and received four shares. His receipt for the money is, in fact, dated the day preceding the date of the execution of this written contract. He was to execute his promissory notes for $50 each for the price of the other six shares, which were to be paid out of his salary at the rate of $50 per month, and the corporation was to employ him as foreman at a monthly salary of $100. He claims the $400 paid for the four shares, as actual damages.

[1] We think the rule clearly established by the authorities that, where one party has been induced to make a contract by fraudulent representations of the other, he may, upon discovery of the fraud, either rescind the contract, return what he has received, and recover back what he has paid out, or, if the contract has not been performed on his part, refuse to do so, or he may, when the fraud is discovered, elect to affirm the contract and recover damages for the fraud and deceit.

"It has sometimes been contended that, when a party has been induced to enter into a contract by the fraud of the other party, his only remedy is to rescind the contract, and sue to recover what he has parted with, or set up the fraud as a defense if he is himself sued on the contract. It is thoroughly well settled, however, that he had an election of remedies, and that, while he may rescind, he is not bound to do so, but may hold the other party to the contract, and sue him to recover the damages which he has sustained in consequence of the fraud." 14 Am. & Eng. Ency. of Law, pp. 167–170.

[2] If he elects to rescind, he must act promptly after he acquires knowledge of the fraud. Any conscious recognition of the contract as being binding, with full knowledge of the fraud, will bar the right to rescind. Minter v. Hawkins, 54 Tex. Civ. App. 228, 117 S. W. 172; Kingman v. Stoddard, 85 Fed. 740, 29 C. C. A. 413; Simon v. Goodyear Shoe Co., 105 Fed. 573, 44 C. C. A. 612, 52 L. R. A. 745; McDonough v. Williams, 77 Ark. 261, 92 S. W. 783, 8 L. R. A. (N. S.) 452; 2 Thomp. Corp. §§ 1376, 1377; 14 Am. & Eng. Ency. of Law, 159, and cases cited in note.

[3] But the rule is quite otherwise where the defrauded party elects to stand by the contract and sue for the damages occasioned by the fraud, as in the present case. In such case he may keep what he has received, and may continue in all things to treat the contract as binding upon him, doing what he is required by the terms of the contract to do. This necessarily results from his right to affirm and abide by the contract and still recover damages for the fraud and deceit. This is, in fact, the essential difference, so far as the facts of this case are concerned, between an action against the corporation for rescission, and the present action against the appellants, directors thereof, for damages for the fraud. Mere affirmance of the contract and retention of the consideration will not of itself operate as a waiver of the right to recover damages for the fraud. 14 Am. & Eng. Ency. of Law, p. 170. But while one who is thus wronged may, without losing his right to recover damages for the deceit, keep what he has got, and continue to perform according to the terms of his contract, in other words, affirm the contract after knowledge of the fraud has been acquired, he cannot do more. Affirmance and performance of the contract, with full knowledge of the fraud, will operate as a waiver if the circumstances of such affirmance and performance show an intent to waive the fraud.

"The rule that affirmance of a contract with knowledge of fraud does not bar an action for damages is subject to the limitations that the party defrauded must stand towards the other party at arm's length, must comply with the terms of the contract on his part, must not ask favors of the

other party or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it. If he does so, he waives the fraud." 14 Am. & Eng. Ency. of Law, p. 171, and note.

This principle of law, in the opinion of the majority, is fatal to appellee's case, under the undisputed facts. His holding on to his stock and continuance in the employment of the company was not a waiver of the fraud, nor would his presence as a stockholder at a stockholders' meeting and participation therein so operate. These rights went with the ownership of the stock. But when, with full knowledge of the fraud by which he had been induced to buy the stock, he sought, by his active efforts as a stockholder, to secure the advantage, to which he was not entitled under the contract, to have the number of his shares doubled, as a part of the action of the corporation with regard to the donation of the stock of appellants and Greenaway, he was doing more than complying with the terms of the contract by which he had become the owner of the stock, and was making "a new agreement or engagement respecting it," and seeking thereby to speculate upon the chances of the venture finally terminating successfully, in which case he would reap the benefit of double the interest in the enterprise which he would have had if he had merely stood upon the terms of the contract. He was, in effect, by this action dealing with the defendants in the matter of their donation of a part of their stock. This was a waiver of the fraud and a bar to appellee's right to recover damages. This conclusion is not affected, but rather emphasized, by the fact that he relied upon the promises of appellant McKallip, when approached about the financial condition of the company, that he would "pull it out of the hole." This conclusion disposes of the case. Under the undisputed evidence the acts of appellee at the stockholders' meeting, heretofore recited, were a waiver of the fraud, and a bar to his right to recover in this action. The court should have given the requested instruction to find a verdict for defendants.

It follows that the judgment should be reversed, and judgment here rendered for appellants, and it is so ordered.

From this conclusion the writer feels compelled to dissent and will briefly set out his reasons therefor. Agreeing with the majority as to the distinction, upon the question of ratification or waiver of the fraud, between this action against the directors of the corporation and one for rescission, and that, in so far as this action is concerned, appellee had the right, after acquiring full knowledge of the fraud, to elect to stand by the contract, retain his status as a stockholder, and continue to act as such, without waiving his right to recover of appellants his rightful damages for the fraud, I cannot

agree that he, by his mere act in seeking to have his shares put upon a parity with those of other shareholders, who might become the owners of the balance of the stock, forfeited his right to recover damages in this action. The contract for the four shares was a fully executed contract. We all agree that the evidence discloses a case of gross and palpable fraud, by means of which appellee was induced to part with his money for the four shares of worthless stock; that the $70,000 worth of shares in the corporation, whose total capital stock was $100,000, issued to McKallip, Kennedy, and Greenaway, who organized it, brought substantially nothing into the treasury of the corporation, Kennedy's $25,000 being given him for services in promoting the corporation, McKallip's $25,000 for his prospective services as president for the first year, and Greenaway's $20,000 for his worthless equity in property incumbered for its full value. When appellee found this out, he approached McKallip about it and was assured that it would be all right, "that he would pull the corporation out of the hole and put it on its feet." Although he knew that the corporation was in an exceedingly precarious condition, still he may be excused for relying, to some extent, on this statement or promise of McKallip, who was the president of the corporation, and thinking that at least something would be saved to him on his stock. If he had two shares issued to him for each one he held, this something would be doubled, and to this extent the damages suffered by him, and for which appellants would be liable, would be lessened. It does not seem to me that his acts indicated that he had the slightest intention to waive the fraud, and his claim on appellants for whatever damages he might ultimately sustain. He was dealing with the corporation, in what he did at the stockholders' meeting, and not at all with appellants. He had elected to stand by his contract so far as the corporation was concerned, and to keep his stock. To double the amount of his shares would only, in the event of a partial loss, which he may be excused for anticipating in the circumstances, have put him on a parity with other shareholders, and whatever increased benefit he would have taken by such action would have inured to the benefit of appellants. I do not think they are in a condition to take advantage of this and urge it here as a bar to appellee's action for damages.

If after the discovery of the fraud, so far as this action is concerned, there being no demand for rescission, but an affirmance of the contract, appellee had sold his stock for the best price obtainable, I think it clear from the authorities he would not thereby have waived the right to recover damages against appellants. I cannot think that his action at the stockholders' meeting should operate more harshly against him.

I am of the opinion that there was no

error, and that the judgment should be affirmed.

Reversed and rendered; REESE, J. dissenting.

#### On Motion for Rehearing.

Upon a hearing in this cause the judgment of the trial court was reversed and judgment rendered for appellants. All of the assignments of error were overruled, except the assignment that the trial court erred in holding that there was no evidence authorizing the submission of the issue of estoppel on appellee, growing out of his action in the stockholders' meeting.

It was held by the majority, one of the justices dissenting, that the undisputed evidence showed such estoppel.

The question was on motion for rehearing certified to the Supreme Court, and it was held by that court that the district court did not err in the matter referred to. The opinion was handed down March 15, 1911, and it is not necessary for us to do more in granting the motion for rehearing and affirming the judgment than to refer to our opinion on the decision of the case, and the opinion of the Supreme Court in answer to the certified questions, neither of which is yet published.

It remains only to say that the motion for rehearing is granted, and, no error appearing, the judgment of the district court is affirmed.