CLARK *v.* LEWIS.

## Opinion delivered June 30, 1919.

1. LANDLORD AND TENANT—CONTRACT TO FURNISH SEED—DAMAGES.—
Where a share-cropper's written contract did not specify the variety of cotton to be planted, but expressly left that open to mutual agreement, and there was an agreement as to the kind of cotton seed to be used, and the landlord fraudulently violated the agreement by substituting another variety, he will be responsible to the share-cropper for the damages sustained.

2. CONTRACT—BREACH—MEASURE OF DAMAGES.—Where a landlord agreed to furnish a prolific short-staple variety of cotton seed to plant, and to pay the share-cropper for his share on the basis of the market price for short-staple cotton, but, instead of doing so, furnished a less prolific variety of long-staple cotton seed, the landlord will be liable to the share-cropper for the difference between the market prices of the long and the short staple cotton.

Appeal from Crittenden Chancery Court; *Archer Wheatley*, Chancellor; affirmed.

*H. R. Boyd*, for appellant.

The chancellor erred in his findings and decrees for the following reasons:

(1) The contracts were valid and there is no evidence of fraud perpetrated in regard thereto in the record.

(2) Being valid contracts and a full disclosure of all facts by the answers, no decree should have been rendered except a dismissal of the suits or decree entered in accordance with the amount tendered in the answers or found due upon the basis of said contracts.

(3) There is no evidence of any fraud whatever in the record.

(4) Plaintiffs, after discovery that Foster cotton seed had been planted, proceeded to carry out said contracts without objection, and thereby ratified them if there was any invalidity in them.

(5) Said contracts were perfectly valid and legal.

There is no invalidity in the contracts. 30 Ark. 56; 23 L. R. A. 449, and notes; 1 Benjamin, Sales, pp. 329-30,

§ 318-19; 35 Ark. 190; 102 *Id*. 349; 156 Fed. 753; 19 L. R. A. (N. S.) 197, and note, p. 201; 20 Cyc. 251.

Evidence of fraud must be decided and reliable and calculated to mislead. 27 Ark. 250; 82 Pa. St. 198. Fraud is never presumed but must be proven. 99 Ark. 45; 33 L. R. A. (N. S.) 836, and note; 40 Ark. 417; 82 *Id*. 20.

Clark was Towne's manager, and there is no evidence that the agent ever had any authority to represent that Wannamaker seed would be planted. After the tenants discovered that they had raised Foster cotton, they took no action to avoid the contract but proceeded to pick and deliver the cotton, and thereby condoned any imperfection or fraud in the contract. 196 Fed. 627; 2 Pomeroy, Eq. Jur. (2 ed.), § 917.

*A. B. Shafer* and *L. C. Going*, for appellees.

It is clearly manifest that in the preparation of the contract the landlord was looking after his interest, and by it the same is thoroughly protected. We do not contend that the written contract was fraudulently procured or that appellees were imposed on in the making of it, the only objection we have made is as to the conduct of the parties under it and the construction which appellant and his intestate placed upon the rights of the parties under it. When appellees went on the place and before the contract was signed, it was represented to them that Wanamaker cotton was to be grown; at the time they signed they thought that such cotton was to be grown. Both Townes and his manager represented to them that the entire place was to be planted in Wannamaker cotton.

The proof is conclusive that Wannamaker cotton was a short staple and grows many more pounds per acre than Foster cotton. If appellant at the time the contracts were made intended to have appellees plant Foster cotton, and for the purpose of taking advantage of appellees, induced them to believe that they were going to raise Wannamaker cotton, and under that induce-

ment fixed the price, then his conduct was a deliberate and unmitigated effort to steal, which courts of equity are always ready and willing to prevent. A very material alteration was made in the contract by appellant in substituting Foster cotton. This was a fraud which equity will not countenance. It was a fraud, and the court below so held, and the decree should be affirmed.

McCULLOCH, C. J. Appellant's intestate, C. L. Townes, owned a plantation in Crittenden County, and leased separate portions of it for the year 1917 to appellees, Milton Lewis, Ned Hall and Henry Croft. There was a printed form of lease used which described the quantity and location of the particular portion of the land to be rented to each tenant and specified, in substance, that the tenant should pay one-third of the crop to the landlord as rent, and should sell and deliver the crop, when harvested, to the landlord, and that the landlord should pay the tenants for cotton so delivered a price "within two cents of Memphis upland quotations, according to grade." The contract contained another stipulation that the tenant should "prepare for, plant, cultivate and gather such crops of cotton and corn as may be mutually agreed upon, under the direction and supervision of the landlord or its agents." Appellees each planted and gathered a crop of cotton for the year specified and delivered the same to the landlord, and this controversy arises concerning the price of the cotton to be credited to the accounts of the tenants.

Townes sold the cotton on the Memphis market, and credited the tenants with the cotton at the price specified in the contract, that is to say two cents per pound less than the price of middling cotton on the Memphis market. It is agreed that that is what the language of the contract meant. The cotton was, however, of the long staple variety, and Townes sold the cotton on the Memphis market at a price largely in excess of the price at which he credited it to the tenants; the testimony establishing the fact that the cotton in fact brought more than forty cents per pound.

Appellees instituted separate actions against Townes in the chancery court of Crittenden County for an accounting of the proceeds of the cotton sold from time to time, and for recovery of the amount according to the price actually realized on the sales. The cases were consolidated, and Townes died during the pendency of the action and the cause was revived in the name of the administrator. There was a decree below in favor of each of the appellees for the amount of the proceeds of the cotton according to the price actually received by Townes, after deducting the accounts for supplies furnished, and an appeal has been prosecuted to this court.

The basis of the suit of appellees, in the face of the letter of the contract, which fixed the price of the cotton to be within two cents of the price of middling cotton on the Memphis market, is the following state of facts which the testimony adduced fully establishes, or at least a finding to that effect is not against the clear preponderance of the testimony.

In the negotiations between the tenants and the landlord before the signing of the contract it was represented to the tenants by the landlord that the kind of seed known as Wannamaker seed would be furnished to the tenants for planting purposes, and each of the tenants agreed to the use of that kind of seed, and, after the contract was entered into and planting time came and the seed was furnished, the landlord still represented to the tenants that the seed furnished was of the Wannamaker variety, but those representations were false, and the seed actually furnished and planted by the tenants was a kind known as Foster seed. Wannamaker cotton is a medium staple variety and very prolific, the average yield from that variety being greatly in excess of the Foster variety, which is shown to be very long staple and not so prolific. The tenants preferred the Wannamaker seed because it was more prolific, and. the testimony shows that that was the variety agreed upon between the parties.

Now, it is contended that the letter of the contract should control, as under established rules of evidence all antecedent statements and agreements during negotiations are merged in the written contract and can not be proved by parol testimony which varies the writing itself. The answer to that contention is that the contract does not specify the variety of cotton to be planted. In fact, one of the clauses of the contract leaves that open to mutual agreement, and the testimony shows that there was in fact an agreement as to the kind of cotton to be used and that Townes fraudulently and surreptitiously violated the agreement by substituting Foster seed instead of Wannamaker seed. Even if the clause of the contract referred to did not apply to the selection of the seed, then it would follow that the contract leaves that question open, and the tenant would have the right to make his own selection as to the variety of the seed, and if by deception and fraud he was induced by the landlord into planting the kind of seed which was contrary to the tenants' selection, then the landlord should bear the loss and not the tenant. The tenants preferred the prolific variety of cotton rather than the long staple, and had the right to make the selection, and it was a fraud on their rights for the landlord to furnish another variety of seed without their consent. The substitution was prejudicial to the interests of the tenants and very much to the benefit of the landlord, for under its operation the tenants raised long staple cotton with the disadvantage of a short yield, and received only short staple prices, whilst the landlord sold the cotton at long staple prices and accounted to the tenants only for the much smaller short staple prices. The testimony shows that Townes received nearly double the price for the cotton at which he accounted to the tenants, and this resulted from the wrongful substitution of the variety of seed agreed upon.

The evidence shows that the tenants did not ascertain that a different variety of seed had been furnished until they were about ready to gather the crop, but they

did discover it then, and it is further contended that the fact that the tenants, with knowledge of the change in kind of seed furnished, gathered and delivered the crop constitutes a ratification of the act of the landlord in furnishing a different variety of seed than that agreed on and that the tenants are on that account estopped to claim a price in excess of that specified in the contract. The rule of law is invoked that where parties are induced by fraud to enter into an executory contract they waive the fraud by proceeding with performance after discovery of the fraud. An exception, however, to that rule is that where the contract is executed in whole or in part before the fraud is discovered, performance does not constitute a waiver. *McDonough* v. *Williams,* 77 Ark. 261; *Thompson* v. *Libby,* 36 Minn. 287. The tenants had expended their time and labor in planting and cultivating the crop, believing that the seed of their own selection had been furnished, and it would be an unjust rule to impose upon them, as a condition upon their right to complain, that they first abandon the contract and give up their crops. The tenants gathered and delivered the crops because the contract required it, but they are entitled to recover the price of the cotton received on the Memphis market because of the fact that the landlord by his wrongful act prevented them from getting advantage of the production of the prolific variety of cotton which they had selected.

Decree affirmed.

