**HAYMAN et al. v. UNITED STATES.**
**No. 291.**

District Court, E. D. Texas, Sherman Division.
May 22, 1931.

J. Cleo Thompson, of Dallas, Tex., for plaintiffs.

S. D. Bennett, U. S. Atty., of Beaumont, Tex., and Eric Eades, Regional Atty., U. S. Veterans' Bureau, of Dallas, Tex., for the United States.

KENNERLY, District Judge.

Madie Hayman, age twenty years, enlisted in the United States Army on February 4, 1918, and on or about March 1st, thereafter, applied for, and was issued, a certificate of insurance, under the provisions of the act of Congress relating to war risk insurance. He was honorably discharged from the service on July 10, 1918, on account of his physical condition, and returned to his home. On October 12, 1918, while on a trip to Muscle Shoals, Ala., he disappeared, and has not been since seen, nor heard from, by his family or friends.

This is an action at law by Sallie Hayman, his mother (joined pro forma by S. J. Hayman, her husband), as beneficiary under such certificate, and as the administratrix of Madie Hayman, to recover against the United States of America upon such certificate. The original pleadings of plaintiffs alleged both total permanent disability and the death of the soldier at a time when the insurance was in force. The allegation as to total permanent disability was abandoned and dismissed by plaintiffs, the plaintiffs there-

after relying wholly upon the allegation of death. Defendant denied the death of the soldier, or, if dead, that he died while the insurance was in force.

Defendant also brings forward in its answer, and defends upon, an allegation that the soldier secured his enlistment in the army, and such insurance, by false and fraudulent statements regarding, and fraudulent concealment of, the condition of his health, at the time of enlistment and previously, and false and fraudulent statements as to his previous enlistments and service in the navy, and in the Texas National Guard, and in the army, by reason of the guard having been mustered into the federal service. Cancellation of the certificate of insurance is prayed for upon such grounds. Plaintiffs filed pleadings, combating such equitable defense.

By agreement, the issues formed by the pleadings in the action at law were submitted to a jury, without prejudice to the rights of the parties under the pleadings presenting such equitable defense. The jury found that the soldier died October 12, 1918. This is a hearing upon such equitable defense, and upon the question of whether judgment should enter for plaintiffs or for defendant.

1. At the time of his enlistment in February, 1918, the soldier made the following statement regarding his health and the condition of his body then, and previously, and his former service, to wit:

(a) That he had never been discharged from either the United States Army or Navy, or any other service, on account of disability. This was untrue. He had been discharged from the navy because of physical disability of August 16, 1917. He had been on December 12, 1916, discharged from the army (he having been a member of the Texas National Guard and having been mustered into the federal service) because of physical disability.

(b) He was asked what illnesses, diseases, or accidents he had had since childhood. He answered pneumonia in 1902, chanoroids in 1912, and a social disease in 1917. He was also asked if he had ever had spells of unconsciousness or convulsions. He answered all in the negative. He was asked if he had ever been under treatment at a hospital or asylum. He answered in the negative. He had in fact received an injury in the head about 1914, and from that time on suffered, from time to time, from an illness which was, or was similar to, epilepsy, with spells of unconsciousness and convulsions. This became very serious while he was in the army in 1916, and was diagnosed by the army surgeons in October, 1916, at the time of his discharge, as epilepsy with mental impairment and "fits," and by the navy surgeons in 1917, at the time of his discharge, as hysteria with spasms. The answers he gave to the questions above set forth were, therefore, untrue.

(c) He stated that he had never previously served in the navy, army, or National Guard. This was untrue.

(d) In other words, this soldier made one attempt to get to fight for his government by entering the army (through the National Guard) in 1916, in anticipation of the World War; another attempt through the navy in 1917 after the declaration of war; and the third through the army in 1918. In the last instance, he, like many other young men, did not tell the truth in the particulars named. Now his government, after giving him an honorable discharge in each instance, more than ten years after these happenings, and more than ten years after his death as found by the jury, seeks to cancel his insurance, which he paid for, upon the ground of fraud. This soldier did not make these untrue statements to obtain the insurance, but only to get into the army. Human experience teaches that men capable of perpetrating a fraud upon their government by obtaining insurance, etc., by fraud, as charged against this soldier by the government, are not fighting men, and do not three times seek to enlist to fight. I am convinced that this soldier had no intention, thought, or purpose of fraudulently obtaining this insurance, and I so find. I think he had no fraudulent intent or purpose in securing enlistment, but only made the untrue statements to get into combat for his government. He did not make the false statements to secure benefits to himself, but to serve his government. In other words, I do not find that mischief in his heart existed, either in the matter of the enlistment, or in the matter of the insurance.

2. Section 518 of title 38 of USCA Act of July 3, 1930, is as follows (italics mine):

"§ 518. Policies incontestable; exceptions; contest defined.

"All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted *shall be incontestable* from the date of issuance, reinstatement, or conversion, *except for fraud,* nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, and subject to the provisions of section 447 of this title. * * *

Provided further, That this section shall be deemed to be effective as of April 6, 1917, and applicable from that date to all contracts of policies of insurance."

I do not find any fraud in this case as to this insurance, nor as to the application therefor. The whole spirit of the different acts of Congress, from the first act regarding insurance, on down, and including the one quoted above, shows a liberal attitude towards those granted insurance, and a purpose that no state of facts, such as exist here, shall serve to render voidable or set aside a soldier's insurance. The fraud mentioned in this section is not intended to include a case such as is presented here.

3. When the government seeks to set aside an instrument evidencing an obligation, such as is this certificate, it is subjected to the same rules respecting the burden of proof, the quantity and character of the evidence, and the presumptions of law and fact, that attend the prosecution of a like action by an individual. A quotation from United States v. Stinson, 197 U. S. 205, 25 S. Ct. 426, 49 L. Ed. 724, which was a suit to set aside a patent, fully supports this view: "The government is subjected to the same rules respecting the burden of proof, the quantity and character of evidence, the presumptions of law and fact, that attend the prosecution of a like action by an individual. 'It should be well understood that only that class of evidence which commands respect, and that amount of it which produces conviction, shall make such an attempt successful.' Maxwell Land-Grant Case, supra, page 381 of 121 U. S., 7 S. Ct. 1015, 30 L. Ed. 949, 959; United States v. Iron Silver Mining Co., 128 U. S. 673, 677, 9 S. Ct. 195, 32 L. Ed. 571, 573; United States v. Des Moines, etc., Company, supra, page 541 of 142 U. S., 12 S. Ct. 308, 35 L. Ed. 1099, 1108."

One of these rules is that one seeking the aid of a court of equity to set aside such an instrument must move without undue delay. The government, at the time of the third enlistment, had in its possession the record of at least one of the former enlistments, and both of the former discharges. No facts are alleged, or proven, excusing the delay for more than ten years after the happening of these events, and more than ten years after the death of the soldier, in suing to cancel the certificate for the alleged fraud.

Up to the time of filing of defendant's answer, praying cancellation of the certificate, no act of defendant, its officers or agents, repudiating the certificate, is shown. Indeed, their action tends to a ratification, rather than a repudiation. The soldier served as long as his health would permit, and was honorably discharged. Indeed, he would doubtless have been permitted to fulfill his ambition, and do battle for his country, had not his health failed him. He was not deprived of any of his rights flowing from his enlistment. The premium on his insurance was retained by the government, and even now there is, in defendant's pleadings, no tender thereof into court, or other offer to do equity, respecting same.

Under these circumstances, equitable relief such as defendant asks should be denied. U. S. v. Stinson, 197 U. S. 200, 25 S. Ct. 426, 49 L. Ed. 724; Johnston v. Smith, 21 Tex. 722; State v. Snyder, 66 Tex. 687, 18 S. W. 106; Johnson v. Llano County, 15 Tex. Civ. App. 421, 39 S. W. 995; First Herman on Estoppel, § 196; Kennedy v. Bender (Tex. Civ. App.) 140 S. W. 491; Galliher v. Cadwell, 145 U. S. 369, 12 S. Ct. 873, 36 L. Ed. 738; Penn Mut. Life Ins. Co. v. Austin, 168 U. S. 687, 18 S. Ct. 223, 42 L. Ed. 626; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Schlawig v. Purslow (C. C. A.) 59 F. 848, 849.

4. 26 Corpus Juris, page 1120 (45) (2), reads as follows: "Intent to Induce Action in General. There can be no redress for misrepresentations made without intent to induce the particular action taken by the hearer, and a fortiori there can be no recovery for representations of a casual nature made without intent to induce any action whatsoever."

An examination of those cases cited in the footnotes to which I have had access does not disclose that the facts therein are exactly as they are in this case. I believe, however, that the quotation correctly states the law applicable to this case. I think that the government has no standing to set aside this certificate of insurance upon the facts which exist in this case, i. e., that this soldier did not make the untrue statements with respect to his health and his previous enlistment in order to obtain, or for the purpose of obtaining, this insurance. He made the untrue representations as hereinbefore found for one purpose only, and that was to enter the army to do combat for his government.

I think the foregoing presents insurmountable difficulties in the way of the cancellation of this certificate of insurance by the government. It follows that the equitable relief prayed for by the government should be denied.

5. The only remaining question is whether or not plaintiffs are entitled to judgment upon the verdict of the jury, finding that the soldier, Madie Hayman, is dead, and that he died on October 12, 1918.

While no insurance premiums were paid after the soldier's discharge (July 10, 1918), it is shown that he was entitled to sufficient compensation, pursuant to the rating of the United States Veterans' Bureau, to pay such premiums under the provisions of section 516, title 38, USCA, to a time subsequent to October 12, 1918. So that this insurance was in full force and effect at the date of the death of this soldier (October 12, 1918) as found by the jury.

Judgment will enter that plaintiffs recover from the defendant the amounts provided for in said certificate of insurance.