C. D. HAVEN and others *vs.* W. E. NEAL and another.

May 26, 1890.

Action for Deceit—Fraudulent Intent, how Shown.— In order to sustain an action for deceit, the fraudulent intent must be established, but it may be inferred from the fact that material false statements are made, with knowledge of their falsity; and where a party who is in a position to know the truth deliberately makes unqualified representations in reference to a material matter which are not true, a similar intent may be inferred; but the question of fraudulent intent is usually for the jury.

Same—Sale—Fraud of Seller—Remedies of Buyer. — In the case of a fraudulent sale of goods, the vendee may retain the same, and sue for damages suffered on account of the fraud; and the receipt of some of the goods, and the completion of the contract subsequent to the discovery of the fraud, will not necessarily constitute a waiver of his claim, or defeat his action for damages.

Same—Representations of Value. — Representations as to the value of property are ordinarily treated as matter of opinion; but they may properly be received in evidence when they are connected with, and serve to characterize, other material statements.

Same—Evidence.—Evidence considered, and *held* to make a case for the jury.

Action brought in the district court for Hennepin county, to recover $2,700 damages for alleged fraud in the sale of logs. Trial before *Young*, J., who ordered a dismissal at the close of plaintiffs' case. The plaintiffs appeal from an order refusing a new trial.

*Gilger & Harrison*, for appellants.

*Hale & Peck*, for respondents.

VANDERBURGH, J.[1] 1. This action is brought to recover damages for alleged false and fraudulent representations, by means of which plaintiffs were induced to enter into a written contract for the purchase of a quantity of logs, at the price of $6 per 1,000, in the spring of 1886. It is alleged in the complaint that, for the purpose of inducing the plaintiffs and the firm of Cole & Weeks, who were jointly

[1] Mitchell, J., took no part in this case.

interested with plaintiffs in the venture, to enter into the contract, the defendants did falsely and fraudulently state and represent to them that all of the logs so contracted to be sold were good, sound, and smooth logs; that there was included among them a lot of 300,-000 feet of large logs, of such size and quality that they were reasonably worth in the boom at Minneapolis $9 per 1,000 feet; that plaintiffs were ignorant of the character and quality of the logs, and were unable to inspect them because they were intermingled with other logs in the river, but that the defendants knew their size, quality, and condition; that the plaintiffs believed these representations, and relied upon them, and were thereby led to make the contract; but that in truth and in fact there were 300,000 feet of the logs included in the contract that proved to be unsound and worthless.

After the plaintiffs had introduced their evidence upon the trial, the court, on the defendants' motion, dismissed the action on the ground that plaintiffs had not shown either actionable fraud or damage. But we think there was evidence in the case sufficient to warrant its submission to the jury. In order to sustain an action for deceit, the fraudulent intent must be established; but it may be inferred from the fact that the false statements are made with knowlege of their falsity. And where a party who may be presumed to know, or who is in a position to know, the truth, deliberately makes unqualified representations in respect to a material matter, in such manner as to import a knowledge by him of their truth, for the purpose of inducing another to act upon them, a similar inference may arise; and, in such case, if a party has acted in reliance on such representations, he is entitled to maintain an action for the injury sustained thereby. But the question of fraudulent intent is usually one for the jury. *Meyer* v. *Amidon*, 23 Hun, 553; 2 Pom. Eq. Jur. § 884; *Hazard* v. *Irwin*, 18 Pick. 95; *Page* v. *Bent*, 2 Met. 371; 3 Wait, Act. & Def. 436; *Salisbury* v. *Howe*, 87 N. Y. 128; *Cowley* v. *Smyth*, 46 N. J. Law, 380; *Humphrey* v. *Merriam*, 32 Minn. 197, (20 N. W. Rep. 138.)

In this case there is no direct evidence that the defendant Neal, who made the representations, knew of their falsity; but he was one of the owners of the logs, and assumed to describe the logs as one

acquainted with their character and condition, and stated that they were in the river where plaintiffs could not see them. Plaintiffs had no knowledge of the logs, except his representations, which they relied on in making the purchase. Without attempting to refer to the evidence in full, it appears from the testimony, among other things, that "Neal represented that the logs were all nice, smooth logs, and there were 300,000 feet or more of them that were very nice logs at Pokegama Lake, and were sound and fine and smooth, well worth $9 per thousand. He said the logs were all sound and smooth." The witness states further: "I found no one who knew about the scaling of these logs but Mr. Neal and Mr. Eustis. I tried to find some one else to get their opinion, but could not; but I had to rely upon Neal entirely." Another witness states: "Neal said that the logs were of sound timber, green, merchantable lumber, and a portion of them, being cut in the vicinity of Pokegama Lake, were very much larger than the rest; that there were 300,000 feet that were very large logs, running from four to five to the thousand." "They were represented to us to be green, sound timber. I had no knowledge, only what Neal told us. I fully relied upon these representations." The witness further stated: "As soon as we began to saw them, we found that some of the logs were old, dry, rotten logs. The good and poor logs were all intermingled. There was no way we could ascertain before we sawed the logs what proportion was good and what bad. There were 300,000 feet or more of these logs that were unsound. I was present at the mill all the time each day that these logs were being sawed. These 300,000 feet or more which I have spoken of were old, dry logs, cut from windfalls,—dead timber." There is also other evidence tending to show that 300,000 feet of the logs delivered under the contract were worthless, and that they were the large logs included therein. Upon the question of fraud or deceit in the sale, there was a *prima facie* case made. That is to say, it was a fair question for the jury to find whether or not the representations were false, and made as of defendants' own knowledge.

2. It is contended that the plaintiffs waived their claim for damages for the alleged fraud by receiving the logs and subsequently making payments upon the contract. But they did not attempt to rescind,

and were not obliged to rescind, the contract.   They had made a large payment in advance.   The other payment was to be made in instalments, and the amount of the damages could not be ascertained till all the logs were sawed, and the greater part were not complained of, but the good and bad were intermingled; and the evidence tends to show that the payments were made under protest, after suit, and upon a promise and agreement by the defendants that they would make good the loss if the logs were not as represented.   We think there was no waiver or intention to waive their claim for damages, if they were not ascertained and allowed as agreed by the defendants.   And no point is made that the actions brought by defendants for the purchase price, and the recovery therein, constituted an estoppel in this case.

3. We think the court erred in holding, upon the dismissal, that the evidence tending to show that a large quantity of the logs were unsound was immaterial, on the ground that it did not appear that such logs were not logs rejected by the surveyor general in the boom scale, and hence were presumably not included in the lot of logs scaled to plaintiffs, and paid for by them.   Under the pleadings the controversy was over logs sold and actually delivered under the contract; and the case was clearly tried upon that understanding by both parties. The point could hardly be fairly raised at that stage of the case.

4. We may add, in respect to some rulings in the course of the trial, that while, as a rule, representations as to the value of property are to be deemed matter of opinion, and not of fact, yet, when such representations are made in connection with others, which are material as tending to establish the plaintiff's case, they should not be ruled out, but the entire statement should be received and considered together.   *Hickey* v. *Morrell*, 102 N. Y. 454, 463, (7 N. E. Rep. 321.) And in this case the alleged representations of the defendants that the 300,000 feet of large logs were worth $9 per 1,000, which was relatively much more than the balance were worth or were claimed to be, was proper to be received as part of the representations which may have tended to influence the buyers under the circumstances of this case.   *Simar* v. *Canaday*, 53 N. Y. 298, 306; *Bacon* v. *Frisbie*, 15 Hun, 26; *Nowlin* v. *Snow*, 40 Mich. 699.   And so, also, evidence

that the poor and unsound logs were the large ones, and of the actual value of such logs as it proved to be, was proper to be received on the question of damages.

These are all the questions which are important to be considered, and the result is that the order denying a new trial should be reversed.

---

[1] Mitchell, J., took no part in this case.