Richard FORCIER, individually and as Trustee for the heirs of Elvern Forcier and Dolly Forcier and the Special Administrator for the Estates of Elvern Forcier and Dolly Forcier, et al., Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

No. 51861.

Supreme Court of Minnesota.

Sept. 18, 1981.

Rehearing Denied Nov. 25, 1981.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and M. J. Coyne, Minneapolis, for appellant.

Bartsch & McIntosh, Thomas C. Bartsch and Andrew C. McIntosh, Minneapolis, Walter E. Riordan, Minneapolis, Austin, Roth, Sunde, McDonough & Tierney, Minneapolis, for respondents.

SIMONETT, Justice.

The trial court granted summary judgment against State Farm Mutual Automobile Insurance Company, finding that the insurance company had wrongfully applied certain provisions in its auto liability policy to deny benefits to five of its policyholders. In addition, the lower court certified the litigation as a class action. State Farm appeals. We reverse in part, affirm in part, and remand.

In their amended complaint, the five plaintiffs allege essentially three different kinds of policy claims, all of which arise out of auto accidents occurring between 1969 and 1975, before the advent of no-fault insurance. Minn.Stat. §§ 65B.41–.71 (1980). Plaintiffs claim that: (1) State Farm was in violation of the then existing statutes in offering its customers supplemental coverage for accidental death coverage and medical benefits less than the minimum called for by the statute; (2) State Farm was in violation of the law by refusing to pay for flowers, vocalist, organist and death certificates as "necessary" funeral expenses; and (3) State Farm improperly "diluted" its uninsured motorist coverage by first deducting medical pay benefits from that coverage, contrary to *Van Tassel v. Horace Mann Mut. Ins. Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973). We will discuss each of these claims in turn and then consider the class action certification.

1. *The requirement of minimum supplemental coverages.* Plaintiff Richard Forcier's wife and daughter were fatally injured in an auto accident on May 19, 1974. His auto policy with State Farm had $5,000 accidental death benefits. Forcier claims the statutory minimum was $10,000 and he is entitled to the larger amount. Plaintiffs Anna Mae Olufson and Tracy M. Paulson make similar claims for medical pay benefits. Ms. Olufson was injured in an auto accident on October 1, 1970. Her auto policies with State Farm each provided for $500 medical expenses incurred within 1 year of the accident. Mr. Paulson was injured in an auto accident on September 10, 1974. His State Farm policy provided up to $2,000 for medical expenses incurred within 1 year. Both policyholders point out their policy coverages were less than the statutory minimum of $2,000 medical expense benefits for medical expenses incurred within 2 years of an auto accident. They sue for the

difference between their actual expenses and the minimum statutory coverage.

It is undisputed that State Farm did offer the minimum supplemental coverages then required by statute. In other words, accidental death benefits of $10,000 were available, as was medical pay coverage of $2,000 for 2 years. Plaintiffs in each case, however, had chosen to purchase less expensive supplemental coverages. The issue is whether State Farm was permitted to offer its policyholders, in addition to and as an alternative to the statutory minimum coverages, other coverages less than the statutory minimums. The answer depends on an interpretation of the applicable statutes.

In 1969 the legislature enacted Minn.Stat. §§ 72A.1493 and 72A.1494 (1969). These sections were renumbered in 1971 as Minn. Stat. §§ 65B.25 and 65B.26 (1971). The first of these two sections (§ 72A.1493) provided:

> No automobile liability or motor vehicle liability policy of insurance shall be renewed, issued, or delivered * * * unless coverages *are made available* to the named insured therein or supplemental thereto as set forth in section 72A.1494, provided, however, that the named insured shall have the right to accept in writing all or any one or more of such coverages.

(Emphasis added.) In other words, the auto insurer had to "make available" certain supplemental coverages and the policyholder would then decide, in writing, if he or she wanted any of the coverages. The next section (§ 72A.1494) went on to describe these supplemental coverages:

> Such supplemental insurance coverages shall *as a minimum* include:
>
> (a) Accidental death benefits of *at least* $10,000 * * *;
>
> (b) Indemnity of *at least* $60 per week for a period of at least 52 consecutive weeks * * *;
>
> (c) Indemnity * * * for medical expenses in an aggregate amount of *at least*

$2,000 for each such injured person, incurred within two years from the date of the accident * * *.

(Emphasis added.)

Respondent-policyholders contend, and the trial court agreed, that the foregoing language requires the insurer to make available, at a minimum, death benefits of at least $10,000 and medical pay benefits of at least $2,000 incurred over 2 years. Further, they claim, to make available any lesser coverages would make the phrases "as a minimum" and "at least" impermissibly superfluous. And finally, they conclude, if the legislature had intended to permit lesser coverages, it would have said so.

We cannot agree. The phrase "as a minimum" does not modify the phrase "are made available"; the two phrases appear in different sections. Rather, "as a minimum" modifies "such supplemental coverages." As we read the statutes, section 72A.1493 says the insurer shall make available certain supplemental coverages as set forth in the next section. The next section, section 72A.1494, says these supplemental coverages "as a minimum" shall include (a) accidental death coverage, (b) disability coverage and (c) medical pay coverage, and, further, that each of those coverages shall be "at least" what is specified.

We think this is what the statute contemplates: At a minimum, an auto insurer shall offer the three listed supplemental coverages, but it can, as the appellant here does, also offer other coverage—both different in kind and different in limit. Different kinds of supplemental coverage may be offered, such as comprehensive, collision, and vehicle reimbursement. We think different limits may also be offered. Nothing in the statutory language prohibits an insurer from also offering supplemental coverages with lesser or greater limits, so long as the statutory coverages are also offered. This interpretation is reinforced when one compares the above provisions to section 72A.149 (Minn.Stat. § 72A.149 (1969)) dealing with uninsured motorist coverage. Policies is-

sued after January 1, 1971, were required to have uninsured motorist coverage equal to the liability limits of the policy; the statute provided the insured had the right, in writing, to reject higher uninsured motorist limits but was expressly precluded from electing limits lower than $10,000/20,000.

In other words, the legislature used different mechanisms for regulating uninsured motorist coverage than for supervising issuance of the three supplemental insurance coverages. As to the former, the coverage was issued unless expressly rejected by the insured; as to the latter, no coverages were issued unless the offer was expressly accepted in whole or in part by the insured. We think State Farm correctly points to the reason for the distinction: the legislature considered uninsured motorist coverage imperative and lesser limits intolerable, but the supplemental coverages were more flexible, since persons often carry other insurance for health and accident, disability, life or major medical. An insured might decide to purchase $5,000 rather than $10,000 accidental death benefits, either because it cost half as much or because he or she already had other life insurance. Nothing in the statutes prevents what is really an expansion of benefits from happening.

We hold, therefore, that appellant State Farm was not limited by Minn.Stat. §§ 72A.1493 and 72A.1494 (1969) to offer just the three coverages contained therein but could, in addition, offer coverages both less than and greater than the specified amounts.

■ 2. *Necessary funeral expenses.* Plaintiff Forcier claims that as a result of the auto accident of May 19, 1974, in which his wife and daughter were fatally injured, he incurred funeral expenses of $1,476.20, but that State Farm declined to reimburse him for expenses of $95.20 for flowers, vocalists, organist and death certificates. Both the pertinent statute, Minn.Stat. § 72A.1492 (renumbered 65B.24), subd. 5

(1969), and State Farm's policy provide that medical pay benefits include "necessary" funeral expenses. State Farm makes two arguments: that certified copies of death certificates relate to the probate of decedent's estate, not to the funeral, and the other contested items may well be appropriate at a funeral but are not necessary.

As to certified copies of the death certificate (these are in addition to the original certificate supplied as part of the funeral service), we believe they relate to the administration of the estate, and we hold they are not a necessary funeral expense. As to the remaining items, we agree with the trial court that these are "generally and customarily included in a funeral," and hence should have been reimbursed as "necessary" funeral expenses.

3. *The nondilution requirement of Van Tassel.* On May 11, 1973, this court decided *Van Tassel v. Horace Mann Mut. Ins. Co.,* 296 Minn. 181, 207 N.W.2d 348 (1973). We held there that provisions of an auto policy permitting the insurer to dilute uninsured motorist coverage by deducting medical expense benefits are void as repugnant to the statute. Two plaintiffs in this action now claim, on different factual situations, that the *Van Tassel* decision entitles them to damages. We take up each in turn.

■ On April 26, 1973, about 2 weeks before the *Van Tassel* decision, plaintiff Karen J. McGhghy settled her uninsured motorist claim with her carrier, State Farm. She was represented by counsel. She now alleges State Farm wrongfully deducted medical pay benefits from the settlement amount and that consequently her release is invalid. State Farm denies there was any deduction. But whether or not a deduction was made is irrelevant, since the parties made a good-faith settlement on the basis of what they then understood the law to be. Our recent decision, *Johnson v. St. Paul Insurance Companies,* 305 N.W.2d 571 (Minn.1981), decides the issue. There we upheld settlement of a minor's claim, for

uninsured motorist benefits entered into 3 weeks before *Van Tassel,* where the parties assumed stacking was impermissible but *Van Tassel* subsequently held otherwise. We reiterated "the strong public policy interest in the finality of settlements." 305 N.W.2d at 574. We hold, therefore, that State Farm is entitled to summary judgment on the McGhghy claim.

Plaintiff Margaret Cleve, on the other hand, has an uninsured motorist claim arising before *Van Tassel* which is still pending. She argues State Farm was asserting a right to offset medical pay benefits against her uninsured motorist coverage; but State Farm responds that, notwithstanding the wording of its policy, since *Van Tassel* it has dropped any claim to deduct medical expenses. The trial court held that Cleve was entitled to summary judgment "as to liability," *i. e.,* that State Farm could not deduct medical expenses. We see no issue here to be resolved. *Van Tassel* speaks for itself. With or without the trial court's decision, Cleve is free, as are any other claimants in her position, to pursue, without the need for a class action, her claim for full compensation under her uninsured motorist coverage.

1. Minn.R.Civ.P. 23.01 provides:
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

2. Minn.R.Civ.P. 23.02 provides:
 An action may be maintained as a class action if the prerequisites of Rule 23.01 are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of

4. *Need for a class action.* We now turn to whether a class action is appropriate for the funeral expense claim that remains. The trial court found that a class action was maintainable under either section (1)(A) or section (3) of Minn.R.Civ.P. 23.02, and he chose to certify the case under section (1)(A), which does not require notice to individual class members and does not permit class members to opt out of the class. We reverse the section (1)(A) finding and remand the section (3) finding.

It is first important to note that this issue comes before us in a unique posture. Normally the propriety of a class action certification will be considered before a case is litigated on the merits. However, here, the liability issues have been fully litigated. On appeal we have reversed two claims but have found State Farm liable on the third issue, improper denial of necessary funeral expenses. Appeal on the certification issue, nonetheless, has been properly preserved by State Farm.

To maintain a class action in Minnesota, a plaintiff must first meet the four prerequisites of Rule 23.01, Minn.R.Civ.P.[1] Next, one of the three categories of Rule 23.02 must be satisfied.[2]

 the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

When more than one category applies, the trial court must select under which section to certify the class action; this decision will affect notice procedures and the ability of class members to exclude themselves from the suit. Minn.R.Civ.P. 23.03.

The prequisites for a class action are met in this case. The trial court so found, and State Farm does not dispute these findings as to the funeral expense subclass. Its arguments as to the other subclasses are now moot.

 Next, we turn to the propriety of the trial court's certification of this case as a class action. We think the claims for funeral expenses are not properly brought as a section (1)(A) class action because the risk of inconsistent adjudications, if brought individually instead of by a class, does not pose a threat of incompatible standards of conduct for State Farm. Minn.R. Civ.P. 23.02(1)(A). "Inconsistent adjudications" does not mean the case in which several people sue the same defendant for damages and some win while others lose. To bring a section (1)(A) suit there must be a real risk that the same defendant will be sued by different plaintiffs for different and incompatible affirmative relief. *Landau v. Chase Manhattan Bank*, 367 F.Supp. 992 (D.N.Y.1973). *See also* C. Wright and A. Miller, 7A Federal Practice and Procedure: Civil § 1773 (1972 & Supp. 1980). Thus where all plaintiffs are seeking damages from a single fund there is a risk that one plaintiff's success will adversely affect other plaintiffs, *Berman v. Narragansett Racing Ass'n, Inc.*, 48 F.R.D. 333, 337 (D.R. I.1969), but no such problem is present here. Therefore a section (1)(A) class action is inappropriate.

The trial court also found that this class action satisfied section (3) of Rule 23.02. To certify such an action the trial court must determine that "questions of law or fact common to the members of the class predominate" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The rule creates flexibility by granting considerable discretion to the trial judge, both to determine whether the suit may be maintained and, during the trial, to alleviate any procedural problems that may arise with subsequent orders. *See* Note, *State Class Action Statutes: A Comparative Analysis*, 60 Iowa L.Rev. 93, 116 (1974). The practical considerations which go into the certification decision include the class action's manageability, fairness, efficiency and available alternatives. Though the class action is often most needed in consumer suits where individual claims are small, Ford, *Federal Rule 23: A Device for Aiding the Small Claimant*, 10 B.C.Ind. & Com.L. Rev. 501 (1969), these suits can also produce classes of such dimensions that the class is unmanageable. C. Wright and A. Miller, *supra*, at § 1782. Since most small claims cannot be aggregated in federal courts to qualify for federal class jurisdiction, *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the need is even greater for state class action statutes to provide a forum for such cases. In *Rathbun v. W. T. Grant Co.*, 300 Minn. 223, 219 N.W.2d 641 (1974), we said that where potential recovery is too small to justify individual litigation, a class action is proper: "All members of the class are entitled to recover the interest charged them. It is unreasonable to assume that they will all litigate individually their just claims." 300 Minn. at 241–42, 219 N.W.2d at 653.

Thus a court should carefully scrutinize the manageability and fairness of bringing a class action. In *Klicker v. State*, 293 Minn. 149, 197 N.W.2d 434 (1972), for example, we found a class action to be maintainable even though it involved litigation over 2,388 nonconforming advertising signs and 40 different plaintiffs. We said, "It is likely that difficulties will be encountered in the management of this class action, but these are insignificant when compared to the difficulties and inconsistencies that may result from a number of actions brought in the various counties of the state involving the same issue." 293 Minn. at 154, 197 N.W.2d at 437.

■ In the present case we find the common issues predominate in the action, satisfying the first part of section (3). This is true because the trial court severed the liability issue from the damage claims and divided the action into subclasses. However, because the court originally did not certify the class action under section (3) and therefore did not fully evaluate the manageability of the action for purposes of section (3), we remand for considering whether this class action is a superior method—the second part of the section (3) standard.

In so remanding, we call to the attention of the trial court our own interim order halting discovery in this case pending a decision on appeal. We granted State Farm's motion delaying their answers to several interrogatories which sought the names of potential class members. State Farm claimed it did not catalog information in such a way as to easily retrieve this information and they argued that it "would create an incredible financial and time-consuming burden upon the company." In the interim motion we were persuaded that the burden of discovery should not be undertaken while the appeal was pending because much of the effort could become moot. Now that the appeal is over and State Farm is liable for the funeral expense claims, the question of manageability becomes whether damages can be efficiently distributed. If there should be insurmountable administrative burdens and costs, then the mechanism of a class action may be inappropriate. Comment, *Manageability of Notice and Damages Calculation in Consumer Class Actions*, 70 Mich.L.Rev. 338, 360 (1971). On the other hand, once convinced there is substantial merit to plaintiffs' claims, the court ordinarily does not let procedural difficulties stand in its way. *Siegel v. Realty Equities Corp. of New York*, 54 F.R.D. 420 (D.N.Y.1972); Quinlivan, *Management Problems of the Class Action under Rule 23(b)(3)*, 6 U.S.F.L.Rev. 343 (1972).

In any event, we believe the issue of manageability, in view of the present posture of this case, needs to be reevaluated by the trial court. Not only should the court evaluate State Farm's claim with respect to ascertaining the names of potential class members, but how, if once ascertained, these claimants can be reimbursed. Will it be necessary to reopen probate files to determine who paid the unreimbursed funeral expenses? Is this information available? Is any alternative mechanism superior? Additional fact hearings should be conducted to consider these distribution problems and the appropriateness of a section (3) class action.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.