**Patrick J. SUTTON, on behalf of himself and all others similarly situated, Appellant,**

**v.**

**VIKING OLDSMOBILE NISSAN, INC., Respondent.**

**No. C2–99–1843.**

Court of Appeals of Minnesota.

June 2, 2000.

Thomas J. Lyons, Jr., Consumer Justice Center, Maplewood, for appellant.

William L. Davidson, Sarah E. Morris, Lind, Jensen, Sullivan & Peterson, Minneapolis, for respondent.

Considered and decided by ANDERSON, Presiding Judge, SCHUMACHER, Judge, and PETERSON, Judge.

## OPINION

SCHUMACHER, Judge

Appellant Patrick J. Sutton, on behalf of himself and all others similarly situated, sued respondent Viking Oldsmobile Nissan, Inc., alleging Minnesota Motor Vehicle Retail Installment Sales Act violations, consumer fraud, common-law fraud, breach of contract, and breach of fiduciary duty. Viking brought a motion for summary judgment on all claims, which the district court granted. We affirm in part and reverse in part.

## FACTS

Sutton bought a truck from Viking. In connection with the sale, Viking also sold Sutton an extended service contract for $1,495 and two credit insurance policies that cost a total of $1,527.69. Sutton financed these purchases as part of the installment financing for the truck. The retail installment sales contract Sutton signed stated that these amounts would be paid to others on his behalf:

Itemization of the Amount Financed:

\* \* \* \*

| (4) Amounts Paid to Others on my behalf: | |
| --- | --- |
| Service contract | $ 1495.00 |
| To public officials | $ 9.50 |
| To insurance companies | $ 1527.69 |
| Total Amounts Paid to Others | $ 3032.19 |

It is undisputed, however, that Viking did not pay $3,032.19 to others on Sutton's behalf. Viking paid North American Warranty Services $752 for the extended service contract and kept the remaining $743 as profit. Viking did pay $1,527.69 as a credit insurance policy premium to American National Insurance Company, but received back $152.77 as a commission. Sutton testified that if he had known that Viking would keep almost 50% of the cost of the extended service contract as profit, he would have tried to negotiate a lower price. If the dealership had been unwilling to negotiate a lower price, Sutton testified that he would not have purchased the service contract.

## ISSUE

Did the district court err by granting Viking's summary judgment motion?

## ANALYSIS

■ On an appeal from summary judgment, we ask whether there are any genuine issues of material fact in dispute and whether the trial court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We review the district court's interpretation of the law de novo, including questions of statutory interpretation. *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990). We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). We will affirm a grant of summary judgment if it can be sustained on any ground. *Winkler v. Magnuson*, 539 N.W.2d 821, 828 (Minn.App.1995), *review denied* (Minn. Feb. 13, 1996).

■ 1. Sutton first contends that Viking violated the Minnesota Motor Vehicle Retail Installment Sales Act, which provides that "[e]very retail installment contract \* \* \* shall contain all the agreements of the parties." Minn.Stat. § 168.71(a)(1) (1998). Sutton denies that he had any unwritten agreement with Viking for it to keep part of the money it charged him for the extended service contract or to receive a commission on the sale of the credit insurance. The gravamen of Sutton's suit is that Viking received its profits without his knowledge, because the contract led him to believe that those amounts would be paid to others on his behalf. There is no evidence that Sutton had any agreement with Viking concerning the profits it would receive or keep. Absent such an agreement, Viking did not violate the Minnesota Motor Vehicle Retail Installment Sales Act provision requiring the retail installment sales contract to include "all the agreements of the parties."

The district court properly granted summary judgment on this claim.

■ 2. Sutton next claims that Viking violated the Prevention of Consumer Fraud Act, which provides as follows:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn.Stat. § 325F.69, subd. 1 (1998). As a consumer protection statute remedial in nature, the consumer fraud act is to be liberally interpreted in favor of protecting consumers. *Boubelik v. Liberty State Bank*, 553 N.W.2d 393, 402 (Minn.1996). Sutton argues that because the entire amounts for the extended service contract and the credit insurance policies were not actually paid to others on his behalf, Viking used a false promise, misrepresentation, or misleading statement in connection with its sale of merchandise to him.

■ Indeed, Viking did not pay to others the entire $1,495 the contract listed as an "Amount Paid to Others on [Sutton's] behalf" for the extended service contract. Instead, Viking paid North American Warranty Services $752 for the extended service contract and kept the remaining $743. Similarly, while Viking did pay to American National Insurance Company the entire $1,527.69 listed on the retail installment sales contract as an amount paid to "insurance companies," that entire amount was not paid to the insurance companies "on [Sutton's] behalf." Instead, Viking received back $152.77 from American National Insurance Company as a commission on the sale of the policies. As a result, Viking made a "false promise, misrepresentation [or] misleading statement" within the meaning of the consumer fraud act with regard to these payments.

Viking nonetheless argues that Sutton cannot show a prima facie violation of the consumer fraud act because he cannot show that Viking made a "material misrepresentation." Viking argues that because Sutton testified that he knew that Viking would receive part of the price of the service contract, its failure to accurately say so on the retail installment sales contract was not a material misrepresentation.

■ This argument fails for several reasons. First, the statute contains no requirement that any misrepresentation be "material." A minor or inadvertent misrepresentation might not be actionable if the retail seller lacked "intent that others rely thereon in connection with the sale of any merchandise," Minn.Stat. § 325F.69, subd. 1, but if the retail seller makes an immaterial misrepresentation with the intent that a consumer rely on it in connection with the sale of merchandise, nothing in the statute prevents the misrepresentation from being actionable. *See Ullom v. Independent Sch. Dist. No. 112, Chaska*, 515 N.W.2d 615, 617 (Minn.App.1994) (court may not add words to statute).

Second, for the purpose of this appeal, Sutton did not, as Viking alleges, "specifically admit[ ] that he knew Viking would retain part of the purchase price of the service contract." Sutton testified in part as follows:

Q: Did you realize at the time that some part of the $1495 would be Viking's share?

A: No, I figured it was the insurance company or the people that had the service contract.

Although Sutton later gave an answer that Viking relies upon for its assertion, that answer is less clear than his first one, because it is phrased in present tense, rather than in past tense referring to what Sutton knew at the time of the transaction. Because we view the evidence in the light most favorable to the party against whom summary judgment was granted, *Fabio*,

504 N.W.2d at 761, we must reject Viking's interpretation of Sutton's testimony.

■ Finally, the plain language of the statute forecloses Viking's argument. The statute provides that false statements and misrepresentations made with the intent that a consumer rely on them in connection with the sale of merchandise violate the statute "whether or not any person has in fact been misled, deceived, or damaged thereby." Minn.Stat. § 325F.69, subd. 1. Sutton's alleged knowledge that Viking would retain part of the $1,495 is therefore irrelevant: even if he knew that, and therefore was not deceived by the contract's statement to the contrary, such a misstatement made with the intent to induce reliance is still actionable, according to the plain terms of the statute.

■ The district court held that even if there had been a misrepresentation, Sutton was not entitled to judgment "because there is no evidence that he was damaged." It is true that, despite the statute's language providing a cause of action "whether or not any person has in fact been * * * damaged thereby," Minn. Stat. § 325F.69, subd. 1, the Minnesota Supreme Court has held that absent "injury," there is no basis for recovery under the consumer fraud act. *K.A.C. v. Benson,* 527 N.W.2d 553, 562 (Minn.1995). But the district court clearly erred by stating there was no evidence Sutton was damaged. Sutton testified that if he had known the extent of Viking's profit on the service contract, he would have negotiated a lower price or refused to buy it. Sutton therefore either overpaid for the service contract or lost the opportunity to refuse to buy it because of the large profit Viking would make on it. That financial detriment is an "injury," and the district court erred by concluding otherwise.

■ Therefore, Viking did in fact make a misrepresentation in connection with the sale of merchandise within the meaning of the consumer fraud act. The only question that remains is whether Viking in-tended Sutton to rely on the misrepresentation, and that is a question of fact. The district court erred by awarding summary judgment to Viking on this claim.

■ 3. Sutton also argues that Viking made an intentional misrepresentation rendering it liable for common-law fraud. An intentional misrepresentation claim requires plaintiffs to allege that defendant (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representer knows to be false or asserts without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation (10) that the plaintiff suffered damages (11) attributable to the misrepresentation. *Florenzano v. Olson,* 387 N.W.2d 168, 174 n. 4 (Minn.1986).

■ Relying on an unpublished federal district court opinion, the district court held there was a

> presumption that as a reasonable consumer, the Plaintiff knew or should have known that the Defendant was being compensated for selling the products and services to him,

implying that it was unreasonable as a matter of law for Sutton to rely on the contract's representation that the entire cost of the service contract was being paid to others on Sutton's behalf. But there is no such presumption in Minnesota law. In fact, Minnesota law is to the contrary, providing that the reasonableness of a plaintiff's reliance is ordinarily a question of fact for the jury. *Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 848 (Minn.1995). The reasonableness of Sutton's reliance on the express terms of the contract is a question of fact inappropriate for summary judgment.

■ The district court also erred by stating that Sutton had produced "no evidence that Defendant intended to defraud the Plaintiff when it failed to itemize the

commissions it received from the contract." But "[t]here is no doubt of fraudulent intent when the misrepresenter knows or believes the matter is not as he or she represents it to be." *Florenzano*, 387 N.W.2d at 173. Contrary to the district court's finding, Sutton did adduce evidence that could lead a rational trier of fact to conclude that Viking knowingly and falsely represented that the entire $1,495 would be paid to others on Sutton's behalf. The question of fraudulent intent is usually for the jury. *Haven v. Neal*, 43 Minn. 315, 316, 45 N.W. 612, 613 (1890). The district court erred in basing summary judgment on this ground.

The court also erred when it said that Sutton

presented no evidence that he would have sought or discovered more favorable terms on the credit life and credit disability insurance and service contract had he known the Defendant was to receive the commissions.

As noted above, Sutton testified that if he had known that Viking would keep almost 50% of the cost of the extended service contract as profit, he would have tried to negotiate a lower price for the service contract. If the dealership had been unwilling to negotiate a lower price in such a situation, Sutton testified, he would not have purchased the service contract. This was sufficient evidence to preserve for the jury the issue whether Sutton was damaged as the result of Viking's misrepresentation.

Sutton has alleged facts sufficient to make out a prima facie case of common-law fraud. The district court erred in granting summary judgment for Viking on this claim.

4. Sutton also brought a breach of contract claim. But a plaintiff may not recover for breach of contract without showing damages resulting from the breach. *Lipka v. Minnesota Sch. Employees Ass'n, Local 1980*, 537 N.W.2d 624, 631 (Minn.App.1995), *aff'd*, 550 N.W.2d 618 (Minn.1996). Sutton suffered no damages from any breach of contract Viking may have committed. Sutton received the benefit of his bargain, because he got the insurance and service contract. Sutton's damages, if any, resulted from the contractual misrepresentation, not from Viking's failure to actually pay the amount on the contract. Absent damages resulting from the breach itself, Sutton may not recover for breach of contract. The district court did not err in granting summary judgment for Viking on this claim.

5. Finally, the district court found that no fiduciary relationship arose between Viking and Sutton because they were negotiating a commercial transaction at arm's length. Absent a showing of special circumstances, this has long been the law in Minnesota. *See, e.g., Shema v. Thorpe Bros.*, 240 Minn. 459, 467, 62 N.W.2d 86, 91 (1953) ("[I]t is clear that the parties were dealing at arm's length, and in such a situation a fiduciary relationship cannot be said to exist between the parties."). The district court did not err in granting summary judgment on this claim.

Our resolution of these issues makes it unnecessary for us to address Sutton's contention that the district court erred by unquestioningly adopting the respondent's proposed findings.

## DECISION

We affirm the district court's grant of summary judgment on the Minnesota Motor Vehicle Retail Installment Sales Act, breach of contract, and breach of fiduciary duty counts. We reverse the district court's grant of summary judgment on the consumer fraud and common-law fraud counts.

**Affirmed in part and reversed in part.**