Ronald PETERSON, et al., individually and on behalf of all others similarly situated, Appellants,

v.

BASF CORPORATION, foreign corporation, Respondent.

No. CX–00–737.

Court of Appeals of Minnesota.

Nov. 14, 2000.

Hugh V. Plunkett, III, Robert K. Shelquist, Plunkett, Schwartz, Peterson, P.A., and Douglas J. Nill, Douglas J. Nill Law Office, Minneapolis, for appellants.

Winthrop A. Rockwell, Brian B. O'Neill, Bruce Jones, John P. Mandler, Faegre & Benson, L.L.P., Minneapolis, and Kenneth F. Johannson, Johannson, Rust, Fagerlund, Yon & Stock, P.A., Crookston, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge, LANSING, Judge, and SCHUMACHER, Judge.

## OPINION

KLAPHAKE, Judge

Appellants brought this New Jersey Consumer Fraud Act claim for fraudulent and unconscionable commercial conduct against respondent BASF Corporation, seeking damages for injuries resulting from BASF's marketing of two identical herbicides. The district court granted BASF's motion for summary judgment, concluding that appellants failed to show that there were any genuine issues of material fact. Because fact issues exist as to whether BASF's marketing was fraudulent or unconscionable commercial conduct under the New Jersey Consumer Fraud Act, we reverse and remand.

## FACTS

Appellants, a group of farmers who grow minor crops such as sugar beets and sunflowers, brought this class action against respondent BASF. BASF is incorporated under Delaware law and is headquartered in New Jersey. Among other enterprises, BASF markets and sells agricultural herbicides nationwide. Two of these herbicides, "Poast" and "Poast Plus," are sold for crops such as flax, beans, sugar beets, sunflowers, alfalfa, and potatoes.

On December 15, 1997, appellants filed suit claiming that BASF engaged in con-

sumer fraud by marketing one herbicide as two different products, selling Poast to them at a premium price, and leading them to believe the less expensive Poast Plus had not been registered with the EPA for use on minor crops.

As support for their claims, appellants presented evidence showing that BASF used different formulation and application instructions on Poast and Poast Plus labels, even though both contained the same active ingredient. BASF then undertook an advertising campaign to stress the fact that Poast was the only product registered for minor crops. In particular, BASF listed Poast Plus in its product brochure as only registered for use on major crops, and mailed farmers a letter stating that Poast Plus should be limited to major crops to "avoid residue problems." BASF also engaged in a national public relations campaign to stress that use of Poast Plus on minor crops was unlawful and harmful to man and the environment. For example, BASF (1) sent a position paper stating that off-label use of Poast Plus would result in hefty fines; (2) was involved in an article stating that off-label use can be dangerous to consumers and the environment; (3) proceeded to report off-label use of Poast Plus to state regulatory authorities, resulting in some farmers being criminally prosecuted; and (4) misled state agriculture officials about the EPA registration status of Poast Plus.

On March 1, 2000, the district court granted BASF's motion for summary judgment and dismissed appellants' New Jersey Consumer Fraud Act claims. This appeal followed.

## ISSUES

1. Did the district court properly grant summary judgment, where BASF's exacting of higher prices from farmers by exploiting the federal herbicide registration process raised genuine issues of material fact?

2. Did the district court abuse its discretion in certifying appellants as a class?

## ·ANALYSIS

### I.

Summary judgment is properly granted when there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R.Civ.P. 56.03. On appeal, "we view the evidence in the light most favorable to the party against whom summary judgment was granted." *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn.1995) (citation omitted). "Any doubt as to whether issues of material fact exist is resolved in favor of the party against whom summary judgment was granted." *Id.* (citation omitted).

■ Appellants' claims against BASF are based on the New Jersey Consumer Fraud Act. The purpose of the act "is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate." *Daaleman v. Elizabethtown Gas Co.,* 77 N.J. 267, 390 A.2d 566, 568 (1978). The act provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as ·aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[ .]

N.J.Stat.Ann. § 56:8–2 (West 1989). The New Jersey Supreme Court has defined "unconscionable" as

> an amorphous concept obviously designed to establish a broad business ethic. The standard of conduct that the term unconscionable implies is lack of

good faith, honesty in fact and observance of fair dealing.

*Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d 454, 462 (1994) (quotations and citations omitted).

■ Appellants alleged that BASF unconscionably exploited the regulatory standards and overtly deceived and lied to farmers to conceal the fact that the less expensive Poast Plus was registered with the EPA for the same crops as Poast. The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) requires herbicides to be registered with the Environmental Protection Agency (EPA). 7 U.S.C. § 136a (1994 & Supp. IV 1998). Through this registration process the EPA also regulates the labeling and packaging of herbicides. *Id.* This process begins with the manufacturer receiving authorization from the EPA to register the herbicide for use on certain crops. FIFRA then allows the states to require the manufacturer to receive state registration to use the herbicide on certain crops. Appellants alleged that BASF designed a plan to limit the state registration of Poast Plus.

In 1992, BASF received authorization from the EPA to register Poast Plus for all the uses it currently held for Poast, which included both major and minor crops. BASF proceeded to register Poast Plus with the states for use only on major crops. BASF's registering of one herbicide for use on different crops was specifically permitted by the EPA. 40 C.F.R. § 152.130(b) (1994). Appellants presented evidence, however, to suggest that BASF designed a plan to conceal the fact that Poast Plus was EPA registered for use on minor crops and to discourage any off-label use of Poast Plus. That evidence consisted of BASF's (1) involvement in publishing articles and newsletters discouraging the use of Poast Plus on minor crops; (2) encouragement of criminal prosecutions for off-label use; and (3) actions in lying to state regulatory authorities about the registration status of Poast Plus. Thus, appellants have shown that a genu-

ine issue of material fact exists as to whether BASF's system of deceit falls within the broad protection of the New Jersey Consumer Fraud Act.

■ BASF argues that even if there is a basis under this act, appellants are barred due to their inability to show damages. *See* N.J.Stat.Ann. § 56:8–19 (West Supp. 2000) (under New Jersey Consumer Fraud Act, party seeking to recover damages must suffer "any ascertainable loss of moneys or property * * * as a result of the use or employment * * * of any method, act, or practice declared unlawful under this act"); *Meshinsky v. Nichols Yacht Sales, Inc.,* 110 N.J. 464, 541 A.2d 1063, 1068 (1988) (precluding private cause of action under New Jersey Consumer Fraud Act, where no ascertainable loss shown).

BASF relies on the federal labeling law to claim that appellants cannot show damages. BASF argues that even if appellants knew that Poast Plus was federally registered for the same uses as Poast, they could not have used Poast Plus on their minor crops because it was not labeled for such use. *See* 7 U.S.C. § 136j(a)(2)(G) (1994) (once herbicide is labeled for specific use "[i]t shall be unlawful for any person * * * to use any registered [herbicide] in a manner inconsistent with its labeling"). BASF's focus is misplaced, however, because appellants' claim is based on their lost opportunity to choose whether to buy Poast or the identical, but four dollars per acre cheaper, Poast Plus. This type of a lost opportunity or financial detriment may be sufficient to prove damages.

In *Sutton v. Viking Oldsmobile Nissan, Inc.,* 611 N.W.2d 60 (Minn.App.2000), a case brought under the Minnesota Prevention of Consumer Fraud Act, this court reversed the district court's determination that no damages had been shown, where

> [the plaintiff] testified that if he had known the extent of [the defendant's] profit on the service contract, he would have negotiated a lower price or refused to buy it. [The plaintiff] therefore ei-

ther overpaid for the service contract or lost the opportunity to refuse to buy it because of the large profit [the defendant] would make on it.

*Id.* at 65.

Similarly, in this case appellants claim that they lost the opportunity to refuse to buy Poast because BASF's marketing scheme and exploitation of federal regulations concealed that Poast Plus was registered for the same uses as Poast. Appellants' reactions when they learned of BASF's scheme constitute circumstantial evidence that these farmers would not have stood idly by and paid inflated fees to BASF.

We therefore conclude that the issues of whether BASF's actions rise to the level of fraud or an unconscionable commercial practice under the New Jersey Consumer Fraud Act are issues for a jury to decide. The district court's grant of summary judgment is reversed and the matter is remanded for further proceedings.

## II.

■ BASF also filed a notice of review, challenging the certification of appellants as a class for purpose of their claims under the New Jersey Consumer Fraud Act. District courts have considerable discretionary power to determine whether a class action is maintainable. *Streich v. American Family Mut. Ins. Co.*, 399 N.W.2d 210, 213 (Minn.App.1987), *review denied* (Minn. Mar. 25, 1987) (citing *Forcier v. State Farm Mut. Auto. Ins. Co.*, 310 N.W.2d 124, 130 (Minn.1981)).

To represent a class in Minnesota, appellants first must satisfy prerequisites of number and common question, and show that the issues are typical and representative of the class. Minn.R.Civ.P. 23.01.

### Number

BASF does not dispute that the class is so numerous that joinder is impractical.

### Common Questions

■ "The threshold for [common questions] is not high and requires only that the resolution of the common questions affect all or a substantial number of class members." *Streich*, 399 N.W.2d at 214 (citation omitted). Appellants allege that the common questions of law and fact include: (1) whether BASF's alleged marketing practices violated the New Jersey Consumer Fraud Act; and (2) the amount of damages incurred by potential claimants. The district court did not abuse its discretion in determining that sufficient common questions exist.

### Issues Representative and Typical of Class

"The remaining prerequisites are often viewed as a two-pronged approach 'intended to insure that the claims of the class members are fully presented and vigorously prosecuted.'" *Id.* at 215 (citation omitted).

■ Typical issues focus on the representative parties and examine whether the parties "have an interest compatible with that of the class sought to be represented." *Ario v. Metropolitan Airports Comm'n*, 367 N.W.2d 509, 513 (Minn.1985) (citation omitted). The typical issues requirement "refers to the potential for rivalry and conflict which may jeopardize the interests of the class." *Id.* The district court did not abuse its discretion in determining that no such tension likely would occur in this case.

■ The representative issue requirement means the representative parties' "interests must coincide with the interests of other class members" and the parties and their counsel will "competently and vigorously prosecute the lawsuit." *Id.* (citation omitted). The district court did not abuse its discretion in determining that appellants' counsel is competent to represent the class. Thus, the requirement of representation is satisfied.

Once appellants have satisfied the four prerequisites of rule 23.01, they must show that their proposed class meets one of the requirements of Minn.R.Civ.P. 23.02. Rule 23.02(c) requires a court to find that common questions predominate over individual questions and that a class action provides a superior method of adjudicating the controversy.

To determine whether common questions of law or fact predominate over individual questions, the court must consider the elements which the plaintiff must establish in order to recover on the claim against the defendant. To predominate, common issues must constitute a significant part of the individual cases.

*Streich,* 399 N.W.2d at 217 (citation omitted).

■ Factors to consider in this analysis include "manageability, fairness, efficiency, and available alternatives." *Id.* at 218 (citation omitted). "The purpose of the class action has been to take 'care of the smaller guy.'" *Id.* (citing *Dolgow v. Anderson,* 43 F.R.D. 472, 485 (E.D.N.Y. 1968)). The class action is most often needed in consumer suits where individual claims are small. *Forcier,* 310 N.W.2d at 130. "[W]here the potential recovery is too small to justify individual litigation, a class action is proper." *Id.* (citing *Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 241–42, 219 N.W.2d 641, 653 (1974)).

In *Rathbun,* the plaintiffs brought a class action to declare the defendant's installment credit plan usurious. The district court limited the class action to the single issue of usury and further limited the action to the question of liability, exclusive of damages. The supreme court concluded that the class action was a superior method of promoting the public purpose of the usury statute, which was designed to protect those who cannot protect themselves. The court concluded:

> All members of the class are entitled to recover the interest charged them. It is unreasonable to assume that they will all litigate individually their just claims.

*Id.* at 241–42, 219 N.W.2d at 653.

■ Although management problems inhere in any class action, the district court is vested with broad powers to alleviate any procedural problems which may arise. *Forcier,* 310 N.W.2d at 130. The reasoning of *Rathbun* applies equally to promoting the public purpose of consumer fraud statutes to protect those who cannot protect themselves. We therefore conclude that the district court did not abuse its discretion in certifying appellants as a class on their New Jersey Consumer Fraud Act claim.

### DECISION

The district court's grant of summary judgment is reversed and the matter is remanded for further proceedings.

**Affirmed in part, reversed in part, and remanded.**