**BROOKDALE PONTIAC–GMC, Appellant,**

v.

**FEDERATED INSURANCE, Respondent.**

**No. C8–01–18.**

Court of Appeals of Minnesota.

June 12, 2001.

Review Denied Aug. 22, 2001.

Mark D. Luther, St. Louis Park, MN, (for appellant).

Gary Hoch, Richard L. Pemberton, Jr., Erica Gutmann Strohl, Meagher & Greer, P.L.L.P., Minneapolis, MN, (for respondent).

Considered and decided by
TOUSSAINT, Chief Judge,
KALITOWSKI, Judge, and LINDBERG, Judge.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

PETER J. LINDBERG, Judge *

An individual purchased an automobile from appellant dealer by a contract co-signed with a signature that was later determined to be forged. The contract had been financed by a bank. When the buyer defaulted, the bank reassigned the contract to appellant pursuant to a master-dealer agreement, and appellant paid the balance due. Appellant then sought to recover from respondent insurance company under forgery provisions. The district court determined that coverage was excluded and granted summary judgment in respondent's favor. Appellant contends that coverage exists under several provisions and asserts it was entitled to attorney fees pursuant to the policy.

## FACTS

Appellant Brookdale Pontiac–GMC (Brookdale) is an automobile dealership and insured under a "garage general liability policy" through respondent Federated Insurance (Federated). Brookdale also purchased from Federated a supplemental insurance policy, which contains a provision to cover losses caused by

> a credit application, rental agreement or lease agreement on which the name, social security number or signature of the applicant, rentee or lessee is false or forged.

An exclusion limits this "false-pretense" provision once the first periodic payment is made. The supplemental policy also contains a "catchall" provision that provides coverage for

> any other criminal scheme, criminal trick or criminal devise which induces

[Brookdale] to part with evidence of title to or possession of the covered "auto."

Because Brookdale does not directly provide financing for its customers, it has entered into "master-dealer" agreements with several local financial institutions, including Firstar Bank. Under the terms of the master-dealer agreement, Brookdale agrees to pay off a customer's financing contract if "[a]ny representation, warranty, or covenant, with respect to the Contract made by [Brookdale] is false or breached."

On January 15, 1997, Brookdale sold a vehicle to Steven Early. Early and a man claiming to be his business partner, Horatius Williams, signed a credit application and an application for transfer of title. Brookdale obtained financing through Firstar on Early and Williams's behalf.

Firstar received five payments made sporadically from March to October 1997. On November 10, 1997, Early wrote a letter to Firstar and stated that due to a miscommunication, he had erroneously included Williams's name on the applications. Early requested that Williams's name be disassociated from the loan. On November 13, 1997, Williams sent a letter to Firstar stating that Early had fraudulently used his name to obtain credit. On December 29, 1997, Williams filed a signed and notarized "affidavit of fraudulent transaction."

On May 13, 1998, Brookdale paid the principal of the loan to Firstar pursuant to the master-dealer agreement. Brookdale subsequently resold the vehicle at an auction for a loss.

On May 26, 1998, Brookdale contacted Federated for reimbursement under the supplemental policy. After an investigation, Federated refused to reimburse Brookdale because Federated believed that the loss was not covered by the terms of the supplemental agreement. Specifi-

cally, Federated noted that because Early had made payments to Firstar, Brookdale's claim fell under the supplemental policy's "first-payment" exclusions, which state that the policy "does not cover any 'loss' [under the false-pretense provision] after the first periodic payment is made."

On December 17, 1999, Brookdale brought a declaratory judgment action against Federated. Both parties moved for summary judgment. The court granted Federated's motion and denied Brookdale's motion. The court agreed with Federated that because Firstar received several payments, the first-payment exclusion prevents recovery. The court found that the false-pretense provision made no significant distinction among credit applications, rental agreements, or lease agreements. The court also found that because the catchall provision contains the modifier "other," a criminal scheme must somehow differ from criminal acts already contained in other provisions. Since false pretenses were covered by another provision, the court found that Brookdale could not seek recovery under the catchall provision. This appeal follows.

## ISSUES

I. Did the district court err in its interpretation of the insurance policy?

II. Is Brookdale entitled to attorney fees under the insurance policy?

## ANALYSIS

### I.

■ Summary judgment is properly granted when there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *see also Peterson v. BASF Corp.*, 618 N.W.2d 821, 823 (Minn.App. 2000). Because there are no disputed facts, we review the district court's inter-

pretation of the insurance policy de novo. *See Zimmerman v. Safeco Ins. Co. of Am.,* 593 N.W.2d 248, 249 (Minn.App.1999), *aff'd,* 605 N.W.2d 727 (Minn. Feb.17, 2000) (interpretation of insurance policy is a question of law).

■■■ "[A]n insurer has the burden of proving that a policy exclusion applies," and courts read such exclusions "narrowly against the insurer." *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn. 1992) (citations omitted). Ambiguities in a policy are generally resolved in favor of the insured. *Nathe Bros., Inc. v. American Nat'l Fire Ins. Co.,* 615 N.W.2d 341, 344 (Minn.2000).

The relevant portions of the supplemental policy are as follows:

We will pay for "loss" to a covered "auto" under this coverage that results from you voluntarily parting with the covered "auto" because of:

\* \* \* \*

(3) a credit application, rental agreement or lease agreement on which the name, social security number or signature of the applicant, rentee or lessee is false or forged.

(4) any other criminal scheme, criminal trick or criminal devise which induces you, at that time, to part with evidence of title to or possession of the covered "auto".

\* \* \* \*

After First Periodic Payment. This policy does not cover any "loss" under coverage \* \* \* (3) above, after the first periodic payment is made.

■■■ Brookdale first contends that the court incorrectly interpreted the false-pretense provision. Because "credit application" is separated by a comma from the words "rental agreement or lease agreement," Brookdale argues that the policy's drafter intended credit applications to be treated differently. Further, Brookdale contends that a credit application differs from the other types of enumerated agreements because one does not make payments on an application; rather, one is merely attempting to obtain credit. Therefore, Brookdale argues the first-payment exclusion only applies to rental or lease agreements.

But looking at the contract as a whole, we find that the terms "credit application," "rental agreement," and "lease agreement" must be construed as a list of similar terms. *Medica, Inc. v. Atlantic Mut. Ins. Co.,* 566 N.W.2d 74, 77 (Minn.1997) ("The policy must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning."). Here, in each of the three lists within this provision, the drafter consistently did not place a comma after the penultimate word in any of the lists. Moreover, other lists in both the insurance policy and the supplemental policy reveal that, except in one provision, the drafter *never* placed a comma after the penultimate word. Although many writers place a comma between the second-to-last word in a list and the conjunction, this is more a stylistic preference than an absolute rule. *See Heaslip v. Freeman,* 511 N.W.2d 21, 23 (Minn.App. 1994) (noting that *The Chicago Manual of Style* (13th ed.1982) and *The New York Times Manual of Style and Usage* (Lewis Jordan ed.1976) have differing opinions on whether a comma must be placed after the penultimate word in a list). Given the consistency within the policy, we do not believe the lack of the comma here holds special significance.

We also hold that there is no difference among credit applications and lease or rental agreements, and the three terms should be construed uniformly. *Auto–Owners Ins. Co. v. Evergreen, Inc.,* 608 N.W.2d 900, 903 (Minn.App.2000) (noting

that "courts should interpret insurance policies so as to give effect to all of their provisions" (citation omitted)); *see also Wayne v. MasterShield, Inc.*, 597 N.W.2d 917, 920 (Minn.App.1999) (a phrase capable of several meanings is defined by the words with which the phrase is associated). In applying for credit, one is agreeing to make periodic payments to repay the financing institution just as one would make periodic payments on a lease or rental agreement. Once the first periodic payment was made, the exclusion applies and Brookdale can no longer make a claim under the false-pretense provision.

Brookdale also argues that the district court erred in interpreting the catchall provision. Because the agreement explicitly listed forgeries and false pretenses, the court interpreted the catchall provision to only apply to other types of criminal schemes, tricks, or devises that were not already covered by the agreement. Brookdale argues that the court erred in interpreting the words "any other" to mean any other crime *not* previously listed.

■ In interpreting contracts, we apply the principle of ejusdem generis, which states that "[g]eneral words are construed to be restricted in their meaning by preceding particular words." Minn.Stat. § 645.08, subd. 3 (2000); *accord Lefto v. Hoggsbreath Enters.*, 581 N.W.2d 855, 856 (Minn.1998). Here, there are no words within the catchall provision itself to help construe the term "any other." It seems logical to turn to the false-pretense provision to determine what "other" crimes fall within the catchall because the false-pretense provision immediately precedes it. Because the false-pretense provision already includes forgery and false pretenses, we conclude that the catchall provision must refer to crimes other than those specifically enumerated. Therefore, the dis-

trict court did not err in finding that the catchall did not include forgery or false pretense.

■ Alternatively, Brookdale argues that the "combination of actions" committed by Early is a swindle and therefore different from forgery and a false pretense: (1) Early falsely represented that he and Williams were buying the vehicle together and (2) Early committed four forgeries by signing Williams's name on the purchase order, a title application, an installment contract, and the credit application. *See* Minn.Stat. § 609.52, subd. 4 (2000) (defining a theft by swindle as when a person "whether by artifice, trick, device, or any other means, obtains property or services from another person"). This is a distinction without a difference: Brookdale is merely trying to place a different label on Early's forgeries and fraudulent acts so that they fall under the catchall provision but not under the false-pretense provision. Therefore, we hold that Brookdale does not have a claim under the catchall provision.

## II.

■ Brookdale claims the insurance policy entitles it to recover "[a]ttorney fees incurred in forcing an insurer to meet its contractual obligations." We review a district court's decision to award or deny attorney fees for abuse of discretion. *In re Estate of Van Den Boom*, 590 N.W.2d 350, 354 (Minn.App.1999), *review denied* (Minn. May 26, 1999). To make a claim for attorney fees, Brookdale had to show that Federated breached the insurance contract in some respect. *See American Standard Ins. Co. v. Le*, 551 N.W.2d 923, 927 (Minn.1996) (holding an insured cannot recover attorney fees incurred in action to determine the question of coverage unless the insured can show a breach of contract). We agree with the district court that Fed-

erated did not breach the insurance policy. Therefore, the court did not abuse its discretion by denying attorney fees.

### DECISION

Because we must construe the language in the false-pretense provision according to its plain meaning, we agree with the district court that Brookdales claim is excluded from coverage because Firstar had received the first payment. We also agree that Brookdale cannot bring a claim under the catchall provision because that provision cannot cover previously enumerated claims. Brookdale is not entitled to attorney fees because there has been no breach of the insurance policy, and thus, we affirm the district court.

**Affirmed.**